653 So.2d 362 (1994)
Anthony WASHINGTON, Appellant,
v.
STATE of Florida, Appellee.
No. 80537.
Supreme Court of Florida.
December 8, 1994.
Rehearing Denied April 27, 1995.
*363 James Marion Moorman, Public Defender, and Robert F. Moeller, Asst. Public Defender, Tenth Judicial Circuit, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., and Robert J. Landry, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Anthony Washington appeals his convictions for first-degree murder, burglary with a battery, and sexual battery and sentences of death and imprisonment. We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution.
On August 17, 1989, Ms. Alice Berdat, a 102-pound, 93-year-old woman, was found murdered in her bedroom, having been badly beaten about her face and head. Her body was badly bruised. There were signs that she had been vaginally and anally raped, and she suffered seventeen rib fractures. Death occurred between the hours of 5:51 a.m. and 10:00 a.m.
Michael Darroch, the detective assigned to the case, learned that Anthony Washington was imprisoned at the Largo Community Correctional Work Release Center, located approximately 2.1 miles from Ms. Berdat's home. The Center's records indicated that on the day of the murder, Washington left the Center at 6:00 a.m., returned at 9:17 a.m., and did not work at his job at Cocoa Masonry. On August 31, 1989, Darroch visited Cocoa Masonry where he spoke with several of Washington's co-workers. The co-workers informed Darroch that Washington sold a gold-colored watch to fellow co-worker Robert Leacock. Darroch visited Leacock at his home, recovered the watch, and showed Leacock a single photo of Washington. Leacock identified Washington as the person who sold him the watch, which was later identified as belonging to Ms. Berdat.
On September 5, 1989, Darroch and two police officers interviewed Washington at the Zephyrhills Correctional Center. Washington did not know, nor did the detective tell him, that he was suspected of murdering Ms. Berdat. The interview dealt with an unrelated sexual battery that occurred on August *364 25, 1989. Darroch read the defendant his rights and obtained hair and blood samples which he said could prove or disprove Washington's guilt in the sexual battery case. When the state sought to use the samples in the Berdat murder case, Washington moved for suppression. His motion was denied by the trial court and on July 16, 1992, a jury convicted him of first-degree murder, burglary with a battery, and sexual battery. The judge overrode the jury's life recommendation and imposed the death sentence.[1] Washington appeals his convictions and sentences.[2]

Guilt Phase
Washington asserts that the trial court erred when it allowed the state to peremptorily challenge prospective juror Johnny L. Welch, an African-American, without providing a valid race-neutral explanation. When the state peremptorily challenged Welch based on his strong opposition to the death penalty, the court found the challenge to be race-neutral. We agree and find no error in the trial court's ruling. In Holton v. State, 573 So.2d 284, 287 (Fla. 1990), cert. denied, 500 U.S. 960, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991), we stated that "opposition to the death penalty [is] race-neutral and acceptable grounds for excusing a prospective juror."
We also disagree with Washington's assertion that the trial court violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution, as well as article I, sections 9 and 12 of the Florida Constitution, when it denied his motion to suppress the blood sample.[3] Although a warrantless search is per se unreasonable under the Fourth Amendment, the search will be considered lawful if conducted pursuant to consent which was given voluntarily and freely. Norman v. State, 379 So.2d 643 (Fla. 1980). When we addressed this issue in Reynolds v. State, 592 So.2d 1082 (Fla. 1992), we held that:
The question of whether a consent is voluntary is a question of fact to be determined from the totality of the circumstances. "[W]here the validity of a search rests on consent, the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority." ... [T]he voluntariness of the consent must be established by a preponderance of the evidence.
592 So.2d at 1086 (citations omitted) (quoting Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 1323, 75 L.Ed.2d 229 (1983)). Our review of the record indicates that after Darroch read Washington his rights, Washington stated he understood his rights, orally waived them, and freely and voluntarily provided Darroch with hair and blood samples. We also find that once the samples were validly obtained, albeit in an unrelated case, the police were not restrained from using the samples as evidence in the murder case. We also find that the taking of blood was not a violation of the self-incrimination clause of article I, section 9 of the Florida Constitution. See Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) *365 (self-incrimination privilege does not extend to the withdrawal of blood); Parkin v. State, 238 So.2d 817 (Fla. 1970) (self-incrimination privilege does not extend to evidence of the body even if obtained by compulsion), cert. denied, 401 U.S. 974, 91 S.Ct. 1189, 28 L.Ed.2d 322 (1971); Wilson v. State, 225 So.2d 321 (Fla. 1969) (compulsory taking of blood and use of the results at trial is not violative of the right against self-incrimination), rev'd on other grounds, 403 U.S. 947, 91 S.Ct. 2286, 29 L.Ed.2d 858 (1971).
Washington's third issue asserts that Leacock's identification of him was obtained by an unduly suggestive procedure and that the trial court erred when it denied his motion to suppress. We agree that the showing of a single photo was unduly suggestive. However, in Edwards v. State, 538 So.2d 440, 442 (Fla. 1989), we held that a pretrial identification obtained from suggestive procedures is not per se inadmissible, but may be introduced into evidence if "found to be reliable and based solely upon the witness' independent recollection of the offender at the time of the crime, uninfluenced by the intervening illegal confrontation." The record shows that Leacock and the defendant had previously worked together and that several other co-workers identified Washington as the seller of the watch. Given this familiarity, we find that although the identification method was unduly suggestive, Leacock's previous work experience with Washington provided an independent basis for the identification, uninfluenced by the suggestive procedure. We find no error in the trial court's ruling.
In his fourth issue, Washington asserts that the trial court erred in not allowing him to depose Anne Baumstark, the DNA technician, and that the state, by not calling Baumstark as a witness, failed to lay a proper predicate for admission of the DNA test results. Florida Rule of Criminal Procedure 3.220 states that a defendant may not depose a person that the prosecutor does not, in good faith, intend to call at trial and whose involvement with the case and knowledge of the case is fully set out in a police report or other statement furnished to the defense. The record reflects that the state did not intend to call Baumstark as a witness; that Baumstark submitted an affidavit which stated that she had conducted over 1200 DNA tests, had no specific recollection of Washington's test, and would have to rely on lab notes to discuss the testing procedure. Based on our review of the record, we find that the state satisfied the requirements of rule 3.220. We also find no abuse of discretion in the court's admission of the DNA test results. When previously faced with this issue, we stated that:
In admitting the results of scientific tests and experiments, the reliability of the testing methods is at issue, and the proper predicate to establish that reliability must be laid. If the reliability of a test's results is recognized and accepted among scientists, admitting those results is within a trial court's discretion. When such reliable evidence is offered, "any inquiry into its reliability for purposes of admissibility is only necessary when the opposing party makes a timely request for such an inquiry supported by authorities indicating that there may not be general scientific acceptance of the technique employed."
Robinson v. State, 610 So.2d 1288, 1291 (Fla. 1992) (quoting Correll v. State, 523 So.2d 562, 567 (Fla. 1988)), cert. denied, ___ U.S. ___, 114 S.Ct. 1205, 127 L.Ed.2d 553 (1994) (citations omitted). The DNA test results were presented through the testimony of FBI Special Agent Dwight Adams, Baumstark's supervisor. Adams testified as to the scientific reliability of the tests, interpreted the DNA test results, worked as a team with Baumstark, and supervised her as she conducted the actual test. Adams' familiarity with the test, his supervision over Baumstark's work, and Baumstark's affidavit laid a proper predicate for admission of the DNA test results.
Contrary to Washington's final guilt phase assertion, the circumstantial evidence produced by the state was sufficient to allow the issue of Washington's guilt to be submitted to a jury. When the case against the defendant is circumstantial, we have held that:
[T]he burden is on the State to introduce evidence which excludes every reasonable hypothesis except guilt. The State is not required to conclusively rebut every possible *366 variation of events which can be inferred from the evidence but only to introduce competent evidence which is inconsistent with the defendant's theory of events. Once this threshold burden has been met, the question of whether the evidence is sufficient to exclude all reasonable hypotheses of innocence is for the jury to determine.
Atwater v. State, 626 So.2d 1325, 1328 (Fla. 1993) (citation omitted), cert. denied, ___ U.S. ___, 114 S.Ct. 1578, 128 L.Ed.2d 221 (1994). The evidence against Washington included DNA test results that matched his semen with those found at the murder scene; microscopic tests that matched his hair characteristics with hairs found at the murder scene; his possessing and selling the victim's watch; and his proximity to the victim's home. Based on this evidence, the jury had sufficient basis to exclude all reasonable hypotheses of Washington's innocence.

Penalty Phase
Washington's first penalty-phase issue asserts that the heinous, atrocious, or cruel aggravating circumstance is vague and arbitrarily and capriciously applied. We find this argument to be without merit. See Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).
We also find no merit in Washington's claim that the trial court improperly imposed the death sentence over the jury's recommendation of life imprisonment. In Tedder v. State, 322 So.2d 908, 910 (Fla. 1975), we held that "[i]n order to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ." We have consistently interpreted Tedder as meaning that an override is improper if there exists a reasonable basis for a jury's recommendation of life imprisonment. Freeman v. State, 547 So.2d 125 (Fla. 1989); Hall v. State, 541 So.2d 1125 (Fla. 1989); Ferry v. State, 507 So.2d 1373 (Fla. 1987). We have affirmed life overrides in cases similar to the instant one. For example, in Coleman v. State, 610 So.2d 1283, 1287 (Fla. 1992), cert. denied, ___ U.S. ___, 114 S.Ct. 321, 126 L.Ed.2d 267 (1993), the aggravating circumstances were: (1) a felony committed while engaging in a robbery, sexual battery, burglary, and kidnapping; (2) heinous, atrocious, or cruel; (3) cold, calculated, and premeditated; and (4) a previous conviction for a violent felony. The mitigating circumstances were the defendant's close family ties and maternal support. See also Mills v. State, 476 So.2d 172 (Fla. 1985), cert. denied, 475 U.S. 1031, 106 S.Ct. 1241, 89 L.Ed.2d 349 (1986); Spaziano v. State, 433 So.2d 508 (Fla. 1983), aff'd, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984). On the other hand, we will not affirm a life override if the record contains mitigating circumstances which may provide a reasonable basis for the jury's life recommendation. For example, in Esty v. State, 642 So.2d 1074 (Fla. 1994), we vacated a life override where the defendant: (1) was eighteen years old; (2) had no prior criminal history; (3) evidenced a potential for rehabilitation; and (4) may have been in an emotional rage during the commission of the murder. See also Parker v. State, 643 So.2d 1032 (Fla. 1994). When faced with the facts of the instant case, we can only conclude that the judge's imposition of a death sentence was proper. Washington is convicted of causing Ms. Berdat's death by homicidal violence, including manual choking and blunt trauma to the chest with multiple rib fractures. There are four valid statutory aggravating circumstances, no statutory mitigating circumstances, and inconsequential non-statutory mitigating circumstances.[4] We disagree with Washington's assertion that the testimony of his mother and Dr. Merin, a clinical psychologist and neuropsychologist, provided a rational basis, i.e., rehabilitation potential, for the jury's recommendation of life. We agree with the trial court's finding that Washington's potential for rehabilitation is extinguished by the "totality of [his] past criminal history, and his behavior in jail to date." Since we are unable to find a reasonable basis for the jury's recommendation of life imprisonment, Washington's death sentence *367 is affirmed. We do agree, however, with Washington's assertion that he was improperly sentenced as a habitual violent felony offender. Washington had been previously convicted of burglary, burglary of an occupied dwelling, burglary of a dwelling, petit theft, burglary of a conveyance, and grand theft in the third degree. These crimes are not listed in the habitual violent felony offender statute. See § 775.084(1)(b)1., Fla. Stat. (1989). His sexual battery conviction is a life felony and pursuant to Lamont v. State, 610 So.2d 435, 438 (Fla. 1992), "one convicted of a life felony is not subject to enhanced punishment as a habitual offender under section 775.084."
We agree with Washington's final issue, in which he asserts that the trial court improperly entered two written judgments, one dated July 16, 1992, (the day he was found guilty) and the other dated September 4, 1992, (the date of the sentencing order). We strike the order entered on September 4 as surplusage.
Based on the foregoing, we affirm Washington's convictions and sentence of death and remand for re-sentencing pursuant to our finding that Washington was improperly sentenced as a habitual violent felony offender.
It is so ordered.
GRIMES, C.J., OVERTON, SHAW, KOGAN and HARDING, JJ., and McDONALD, Senior Justice, concur.
NOTES
[1] The court found aggravating circumstances of: (1) a capital felony committed by a person under sentence of imprisonment, (2) previous conviction of another felony involving the use or threat of violence, (3) a capital felony committed while engaged in the crimes of burglary and sexual battery, and (4) heinous, atrocious or cruel. The court found no statutory mitigating circumstances, and found the non-statutory mitigating circumstances of defendant's love for his mother, his high school diploma, and his sports activities during high school.
[2] The issues raised on appeal are: (1) the state improperly peremptorily excused an African-American prospective juror; (2) the trial court should have suppressed the blood sample; (3) Leacock's identification should have been suppressed; (4) the DNA evidence was improperly admitted; (5) there was insufficient evidence to support Washington's guilt; (6) the heinous, atrocious, or cruel aggravating circumstance was vague; (7) the death sentence was improperly imposed; (8) Washington should not have been sentenced as a habitual violent felony offender; and (9) one of the two written judgments filed is extraneous and must be stricken.
[3] The motion asserted that both the blood and hair samples should be suppressed. On appeal, however, Washington argues only the suppression of the blood sample since additional hair samples were taken pursuant to a state motion that was not objected to by his trial counsel.
[4] We are mindful of Washington's contention that the heinous, atrocious, or cruel aggravating circumstance was invalid, but we have found this issue to lack merit. See supra p. 366.