714 So.2d 423 (1998)
Ronald JORGENSON, Appellant,
v.
STATE of Florida, Appellee.
No. 86916.
Supreme Court of Florida.
June 11, 1998.
*424 Byron P. Hileman, Winter Haven, for Appellant.
Robert A. Butterworth, Attorney General, and Robert J. Landry, Assistant Attorney General, Tampa, for Appellee.
PER CURIAM.
We have on appeal the judgment and sentence of the trial court imposing the death penalty upon Ronald Jorgenson. We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution. For the reasons expressed below, we affirm Jorgenson's first-degree murder conviction but vacate the sentence of death and instead, direct imposition of a sentence of life imprisonment without possibility of parole for twenty-five years.
The evidence presented at trial established the following facts. In the early morning hours of December 2, 1993, Jorgenson called the sheriff's office to report that Tammy Jo Ruzga was missing. Ruzga and Jorgenson had been living together for approximately eight months. Jorgenson told the sheriff's office that Ruzga had left the house the previous evening in his car and had not returned. Hours later, Ruzga was found dead in the car on the side of a road. She had been shot three times in the head. The murder weapon was never found. Shoe prints, tire prints from a second car, and a Camel Light cigarette butt were found near the murder scene.
On the afternoon of December 2, detectives observed shoe prints at Jorgenson's house similar to those found at the murder scene. Jorgenson voluntarily agreed to come to the sheriff's station for an interview. Jorgenson waived his Miranda[1] rights and voluntarily gave the detectives the pair of shoes he was wearing. The detectives also collected several Camel Lights cigarette butts that Jorgenson discarded while at the station. When asked about the previous night, Jorgenson stated that he was at Rocky Finley's house with Laurie Kilduff. Jorgenson stated that after leaving Finley's house, he and Kilduff stayed at Jorgenson's house the rest of the night.
When interviewed, Kilduff told the same story as Jorgenson, but added that she and Jorgenson had gone out for a drive. Kilduff was interviewed a second time on December 3, again repeating the same story. Detectives *425 analyzed the tires on Kilduff's car at the second interview, to see if they matched those found at the murder scene. After making a positive identification, the police arrested Kilduff for a previous violation of probation. Detectives confronted Kilduff with evidence which implicated her and Jorgenson in Ruzga's murder. She was warned that she could be charged as a principal for first-degree murder. She was told that it was her last chance to talk, and if she helped out, she would receive complete immunity. Kilduff finally admitted that she was near the murder scene on the night of the murder, that she witnessed Jorgenson shoot Ruzga, and that she drove Jorgenson home. Kilduff repeated this testimony at trial.
Other evidence presented at trial established that both Jorgenson and Ruzga used the drug methamphetamine. Jorgenson was also a dealer of the drug. Witnesses alleged that Ruzga's drug use caused her to lie and steal from Jorgenson, creating friction between the two. A number of witnesses testified that Jorgenson made references to wanting to kill Ruzga in the weeks before the murder. Several witnesses also testified that Jorgenson discussed the details of the murder with them.
State evidence was introduced that linked Jorgenson's saliva to that which was on the cigarette butt found at the murder scene. There was also evidence that the shoe prints found at the murder scene matched Jorgenson's shoes, and the tire prints found at the murder scene matched Kilduff's car.[2] At the end of the guilt phase, the jury found that Jorgenson was guilty of first-degree murder.
During the penalty phase, the State presented one aggravating factorJorgenson's prior 1967 conviction for second-degree murder in Colorado. Jorgenson presented two statutory mitigating factors: (1) the murder was committed while Jorgenson was under the influence of extreme mental or emotional disturbance and (2) Jorgenson's capacity to conform his conduct to the requirements of the law was substantially impaired. Jorgenson also presented three nonstatutory mitigating factors which were recognized by the trial court: (1) the murder was committed while Jorgenson was under the influence of drugs, (2) the murder was a product of disagreement stemming from a romantic relationship, and (3) there was disparity of treatment between Jorgenson and Kilduff. Jorgenson alleges in this appeal that he also presented eleven additional nonstatutory mitigators.[3] The jury recommended death by a vote of eleven to one.
The trial court found that the aggravating factor was proven beyond a reasonable doubt. The trial court determined that neither of the statutory mitigating factors nor the second nonstatutory mitigating factor were established. The trial court also determined that the two established nonstatutory mitigating factors only deserved minimal weight. The trial court did not address the eleven nonstatutory mitigating factors that Jorgenson raises in this appeal. The trial court agreed with the jury's recommendation and imposed the death penalty.
Jorgenson raises seven points on appeal. He asserts the following: (1) the trial court erred by denying Jorgenson's motion to suppress evidence and statements; (2) the trial court erred by permitting the State to introduce *426 evidence of collateral crimes and bad acts; (3) the trial court erred in failing to find that Jorgenson established the alleged mitigating factors; (4) the trial court erred by failing to discount the weight of the previous violent felony aggravating factor based on the facts of the previous felony; (5) the trial court erred by weighing and allowing the penalty phase jury to weigh the nonstatutory aggravating factor that Jorgenson was a drug dealer; (6) the trial court erred in denying Jorgenson's requested jury instruction regarding the nonstatutory mitigating factor of disparity of treatment of an accomplice, and that the trial court erred in failing to find this mitigating factor; and (7) the death penalty is disproportionate in this case.
We address the two guilt phase issues first. In issue one, Jorgenson argues that the trial court erred by denying his motion to suppress evidence and statements. Jorgenson attempted to suppress a pair of shoes, statements that he made to the detectives, and items collected from his home, including clothing, ammunition, and blood samples. Jorgenson signed a consent form, which gave the sheriff's office permission to perform the searches. Jorgenson also acknowledged in the consent form that he understood his Miranda rights and that he was waiving those rights. Jorgenson argues that the voluntariness of the consent to search and the waiver of his Miranda rights was impaired, due to Jorgenson being under the influence of drugs at the time the consent was given.
A warrantless search is per se unreasonable under the Fourth Amendment. Washington v. State, 653 So.2d 362, 364 (Fla. 1994). However, a search will be considered lawful if conducted pursuant to consent which was given freely and voluntarily. Id.; Norman v. State, 379 So.2d 643, 646 (Fla. 1980). In Washington, this Court stated:
The question of whether a consent is voluntary is a question of fact to be determined from the totality of the circumstances. "[W]here the validity of a search rests on consent, the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority." ... [T]he voluntariness of the consent must be established by a preponderance of the evidence.
653 So.2d at 364 (quoting Reynolds v. State, 592 So.2d 1082, 1086 (Fla.1992)) (alterations in original).
Similarly, the burden of showing that a defendant's statement was voluntarily made is on the State. Brewer v. State, 386 So.2d 232, 236 (Fla.1980). The State must establish voluntariness by a preponderance of the evidence. Id.
At the hearing on the motion to suppress, Detective Cospar and Detective Warren testified that Jorgenson did not appear to be under the influence of any intoxicants at the time he gave the search consents and waived his Miranda rights. On cross examination, defense counsel was able to impeach the testimony of Detective Warren.[4] However, Jorgenson did not offer any substantive evidence to establish that he was in fact under the influence of drugs at the time he gave his consent for the searches and waived his Miranda rights.
Based upon our review of the record, we find that there is competent, substantial evidence that Jorgenson was not intoxicated at the time he gave his consent for the searches and waived his Miranda rights. Therefore, we find that the trial court did not err in its ruling on the motion to suppress.
In issue two, Jorgenson argues that the trial court erred in permitting the State to introduce evidence of collateral crimes and bad acts. Specifically, Jorgenson argues that it was impermissible for the State to present evidence regarding Jorgenson's activities as a drug dealer. Jorgenson contends that the State made his drug dealing a feature of the trial. Jorgenson also argues that this evidence was not relevant to prove any material issue in this case.
*427 Drug dealing is not similar to the crime for which Jorgenson was tried in this case and therefore could not have been admitted under section 90.404(2)(a), Florida Statutes (1993).[5]See Sexton v. State, 697 So.2d 833, 836 (Fla.1997). However, this did not preclude the evidence from being admitted on a different basis. In Sexton, we addressed the standard for the admissibility of similar crime and bad act evidence when the evidence is not similar to the crime committed in the instant case:
However, the fact that this evidence was not admissible under section 90.404(2)(a) does not mean that it was not admissible at all. As we stated in Williams, 110 So.2d at 659:
Our initial premise is the general canon of evidence that any fact relevant to prove a fact in issue is admissible into evidence unless its admissibility is precluded by some specific rule of exclusion. Viewing the problem at hand from this perspective, we begin by thinking in terms of a rule of admissibility as contrasted to a rule of exclusion.

Later, in Bryan v. State, 533 So.2d 744, 746 (Fla.1988), we explained:
Evidence of "other crimes" is not limited to other crimes with similar facts. So-called similar fact crimes are merely a special application of the general rule that all relevant evidence is admissible unless specifically excluded by a rule of evidence. The requirement that similar fact crimes contain similar facts to the charged crime is based on the requirement to show relevancy. This does not bar the introduction of evidence of other crimes which are factually dissimilar to the charged crime if the evidence of other crimes is relevant.
Thus, section 90.404 is a special limitation governing the admissibility of similar fact evidence. But if evidence of a defendant's collateral bad acts bears no logical resemblance to the crime for which the defendant is being tried, then section 90.404(2)(a) does not apply and the general rule in section 90.402 controls. A trial court has broad discretion in determining the relevance of evidence and such a determination will not be disturbed absent an abuse of discretion. Heath v. State, 648 So.2d 660, 664 (Fla.1994).
697 So.2d at 836-37.[6]
With respect to the evidence that Jorgenson was a drug dealer, we find that *428 the trial court did not abuse its discretion in ruling that this evidence was relevant. A material issue in this trial was Jorgenson's motive for the alleged murder. The record establishes that Jorgenson was in the business of delivering and selling methamphetamine, and that Ruzga was regularly used as a delivery person. The record also establishes that Ruzga had stolen from Jorgenson and that he was angered by Ruzga's abundant use of methamphetamine. State witness Michael Hughes, a cellmate of Jorgenson's, testified that after the murder Jorgenson told him about his problems with Ruzga and Ruzga's subsequent threats to turn Jorgenson in if he were to cut off her drug supply. Hughes also testified that Jorgenson threatened to get rid of anyone who interfered with his drug business. Thus, the evidence regarding Jorgenson's drug dealing was relevant to support the State's theory of the motive in this case.
Furthermore, although Jorgenson does not raise this issue, our review of the record indicates that there was competent, substantial evidence to support Jorgenson's conviction of guilt for first-degree murder.
We next turn to the penalty phase issues. Although Jorgenson raises a number of penalty phase issues, we find issue seven to be dispositive. Therefore, we decline to address Jorgenson's other penalty phase issues. In issue seven, Jorgenson argues that the death penalty is disproportionate in this case. We agree. The State only presented and the trial court only found one aggravating factor in this caseJorgenson's 1967 prior conviction for second-degree murder. The facts of this prior conviction mitigate the weight that a prior violent felony would normally carry. See Chaky v. State, 651 So.2d 1169, 1173 (Fla.1995) (holding that the death penalty was disproportionate where the lone aggravator based on a prior violent felony was mitigated by the facts surrounding the previous crime). The facts of the 1967 conviction, as stated by the Supreme Court of Colorado, are as follows:
Defendant's sister called him on the night of August 25, 1966, and told him her common law husband, Philip Morgan, had automobile license plates which belonged to her. She said she had found Morgan at a bar and asked the defendant to help her get the plates back from him. Defendant and a friend drove out to the bar. Defendant entered and asked Morgan to return the plates. Morgan refused. Defendant left the bar and went into the parking lot towards his car. At this time Morgan and defendant's sister came out onto the porch of the bar. Morgan began to hit the sister. Defendant reached into the car, took out his pistol, and fired a warning shot over their heads with the hope of frightening Morgan. Morgan jumped off the porch and ran towards defendant. Defendant testified that Morgan shouted that defendant would have to kill him or be killed. Thereupon, defendant shot three times and wounded Morgan. According to defendant, Morgan was still able to reach defendant and fight him for the gun, so defendant fired a fourth and fatal shot to the head. Witnesses for the People testified that Morgan did not get close enough to defendant to touch him, and that defendant fired until Morgan dropped.
Jorgenson v. People, 174 Colo. 144, 482 P.2d 962, 963 (1971).
We also find it significant that Jorgenson did not have any criminal convictions from the time he was released from prison in 1973 until he was arrested in 1993 for a drug offense and the present crime. Based on the facts surrounding the previous conviction, the time separating the previous conviction and the present crime, and the mitigating factors that Jorgenson has presented, we find that the death penalty is disproportionate in this case.
Accordingly, we affirm Jorgenson's conviction for first-degree murder, but we vacate his death sentence and remand this cause for the imposition of a life sentence without possibility of parole for twenty-five years.
It is so ordered.
KOGAN, C.J., OVERTON, HARDING and ANSTEAD, JJ., and GRIMES, Senior Justice, concur.
*429 SHAW, J., concurs in part and dissents in part with an opinion.
WELLS, J., concurs as to the conviction and concurs in result only as to the sentence.
SHAW, Justice, concurring in part, dissenting in part.
I disagree with the conclusion that Jorgenson's death sentence is disproportionate. Although the trial court found that two nonstatutory mitigating circumstances were established, it assigned little weight to each. The sole aggravating circumstance, on the other hand, is extraordinarily weighty. Jorgenson was convicted in 1967 of second-degree murder for a crime that bears several of the earmarks of the present offense. In the 1967 crime, he fired multiple shots at the victim and ultimately killed him by a gunshot wound to the head. I note that in the present case he shot the victim in the head three times. This Court has upheld the death sentence in cases where the sole aggravating circumstance was a prior murder.[7] In the instant case, the weighty aggravator of a prior murder coupled with weak mitigation adequately supports the trial court's imposition of the death sentence. I would affirm the trial court's order.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] Additionally, a witness testified that on the evening of the murder, Jorgenson had what appeared to be ketchup on his shirt and appeared to be fidgety. Witnesses testified that Jorgenson often carried a gun. Also, a letter written by Jorgenson to Kilduff, after Jorgenson was in jail pending trial, stated, "Without you they don't have a case."
[3] Jorgenson asserts that he raised the following nonstatutory mitigating factors during the penalty phase: (1) Jorgenson suffered an impoverished childhood; (2) Jorgenson's childhood was spent as a latchkey kid; (3) Jorgenson dropped out of high school; (4) Jorgenson was raised in a single-parent home with no child support; (5) Jorgenson lived a law-abiding life from 1973 to 1993; (6) Jorgenson was a good and loving father; (7) Jorgenson had a loving relationship with his family; (8) Jorgenson was a good friend to many; (9) Jorgenson was 54 at the time of sentencing and would not be eligible for parole until he reached the age of 79; (10) none of the aggravating factors of section 921.141(5), Florida Statutes (1993), apply to the facts of this crime; and (11) Jorgenson is intelligent and the anti-social aspects of his brain damage can be ameliorated in a structured environment, thus allowing Jorgenson to be rehabilitated and make a positive contribution in prison.
[4] In a previous deposition, Detective Warren testified that Jorgenson appeared to be under the influence of drugs.
[5] Section 90.404, Florida Statutes (1993), entitled "Character evidence; when admissible," states:

(1) CHARACTER EVIDENCE GENERALLY.Evidence of a person's character or a trait of his character is inadmissible to prove that he acted in conformity with it on a particular occasion, except:
(a) Character of accused.Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the trait.
(b) Character of victim.
1. Except as provided in s. 794.022, evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the trait; or
2. Evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the aggressor.
(c) Character of witness.Evidence of the character of a witness, as provided in ss. 90.608-90.610.
(2) OTHER CRIMES, WRONGS, OR ACTS.
(a) Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
(b) 1. When the state in a criminal action intends to offer evidence of other criminal offenses under paragraph (a), no fewer than 10 days before trial, the state shall furnish to the accused a written statement of the acts or offenses it intends to offer, describing them with the particularity required of an indictment or information. No notice is required for evidence of offenses used for impeachment or on rebuttal.
2. When the evidence is admitted, the court shall, if requested, charge the jury on the limited purpose for which the evidence is received and is to be considered. After the close of the evidence, the jury shall be instructed on the limited purpose for which the evidence was received and that the defendant cannot be convicted for a charge not included in the indictment or information.
[6] Section 90.402, Florida Statutes (1993), entitled "Admissibility of relevant evidence," states: "All relevant evidence is admissible, except as provided by law."
[7] See, e.g., Ferrell v. State, 680 So.2d 390 (Fla. 1996) (affirming death sentence where sole aggravator was prior second-degree murder), cert. denied, ___ U.S. ____, 117 S.Ct. 1262, 137 L.Ed.2d 341 (1997); Duncan v. State, 619 So.2d 279 (Fla.1993) (affirming death sentence where sole aggravator was prior second-degree murder). See also Lindsey v. State, 636 So.2d 1327 (Fla.1994) (affirming both death sentences in double homicide where sole aggravator to support one of the death sentences was prior second-degree murder).