PER CURIAM.
Anthony Neal Washington appeals an order of the circuit court denying his first motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 following an evidentiary hearing. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. We affirm. Washington also petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(9), Fla. Const. We deny the petition.
I. FACTS
The relevant facts are set forth fully in this Court’s opinion on direct appeal.[1] Alice Berdat in 1989 was found beaten to death in her bedroom. Washington, who was an inmate in a local work release center, was arrested, tried, and convicted of first-degree murder, burglary with a battery, and sexual battery. Evidence supporting the convictions included the following: DNA test results matched his semen to that of semen found at the scene; microscopic test results matched his hair to that of hair found at the scene; he possessed and sold the victim’s watch the day after the crime; and he was placed in close proximity to the victim’s home at the time of the crime.
The trial court overrode the jury’s life recommendation and imposed a sentence of death based on four aggravating circumstances [2] and three nonstatutory mitigating circumstances.[3] Washington appealed, *1085 raising nine issues.[4] We affirmed. Washington in 1997 filed in circuit court a “shell” motion for postconviction relief under Florida Rule of Criminal Procedure 3.850; he filed his present amended motion in 1999. The circuit court held a two-day evidentiary hearing on the issue of ineffective assistance of penalty phase counsel; the court then denied relief. Washington appeals, raising seven issues.[5] He also has filed in this Court a petition for a writ of habeas corpus, raising two issues.[6]
II. RULE 3.850 MOTION
During the penalty phase of the trial, Washington called one lay witness (his mother), who testified in personal terms concerning Washington’s character, and one expert (Dr. Merin), who testified as to Washington’s potential for rehabilitation. Washington now claims that trial counsel was ineffective in failing to present additional mitigating evidence and in failing to provide Dr. Merin with background information. He claims that' if counsel had been effective in these regards, the trial court would have been unable to override the jury’s life recommendation. At the evidentiary hearing, Washington presented nine witnesses, including relatives, friends, a psychiatrist, lead trial counsel (Franklyn Louderback), and trial co-counsel (Tom McCoun). The gist of their testimony was that Washington suffered from a drug problem that was never brought out at trial.
This Court in Bruno v. State, 807 So.2d 55 (Fla.2001), articulated the following standards:
The test to be applied by the trial court when evaluating an ineffectiveness claim is two-pronged: The defendant must show both that trial counsel’s performance was deficient and that the defendant was prejudiced by the deficiency. The standard of review for a trial court’s ruling on an ineffectiveness claim also is two-pronged: The appellate court must defer to the trial court’s findings on factual issues but must review the court’s ultimate conclusions on the deficiency and prejudice prongs de novo.
Bruno, 807 So.2d at 61-62 (footnotes omitted).
After hearing the testimony of the witnesses at the evidentiary hearing, the circuit court below denied this claim. The court explained:
This one aspect of defendant’s life— his serious drug addiction that provides these disorders, carries baggage that a sentencing jury would have to hear that his trial lawyer didn’t want them to hear. [Trial counsel] didn’t want the *1086 jury to know the defendant was a drug addict. He didn’t want them to know the defendant sold drugs, sometimes making $3,000 per week, robbed his girlfriend and others, and stole from his mother, his brother, and many others, to support his drug habit. He didn’t want the Pinellas County jury to know he committed a burglary, or sold drugs. The totality of all this may not have been considered mitigating by Mr. Washington’s jury. Had they known all this, they may well have recommended a death sentence. Counsel cannot be deemed ineffective for not explaining a background of drug addiction and presenting it to Dr. Merin and thus to the jury when he knew this may not produce a good result for his client. He knew about the defendant’s drug use — he simply elected not to explore and exploit it because he didn’t want to go there. Knowing what juries will accept as mitigating and what they won’t is not ineffectiveness. To the contrary, omitting all this from the jury’s knowledge proved to be effective. It got the defendant a life recommendation in a very aggravated case.
The court concluded that even if the additional evidence would have precluded the override, omission of the evidence still would not have constituted ineffectiveness:
In other words, if the defendant could convince this court, which he could not, that the additional evidence presented at the evidentiary hearing would have precluded this court’s override, the defendant is not entitled to relief. If the defendant can convince the Florida Supreme Court that the additional evidence presented at the evidentiary hearing would have resulted in that Court’s reversal of this court’s override, the defendant is not entitled to relief. The reason is that before the defendant is entitled to any relief, BOTH prongs of the Strickland[7] test must be met. The defendant has not been able to establish either prong, but he clearly has failed to establish the first prong, that trial counsel’s performance was deficient. To do this, he must have established that counsel made “errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment.” This he has been unable to do. The defendant had effective counsel at the penalty phase of his trial.
Our review of the record shows that the circuit court’s findings of fact on this claim are supported by competent substantial evidence and its ultimate conclusions on the deficiency and prejudice prongs comport with the law. Penalty phase counsel made a strategic decision not to pursue drug addiction as a mitigating circumstance and in fact won a life recommendation from the jury. We find no merit to this claim.
Next, Washington claims that the trial court erred in summarily denying his claim of ineffective assistance of guilt phase counsel. We disagree. The Court in LeCroy v. Dugger, 727 So.2d 236 (Fla.1998), articulated the following standard: The standard for determining whether an evidentiary hearing is required on an ineffectiveness claim is as follows:
A motion for postconviction relief can be denied without an evidentiary hearing when the motion and the record conclusively demonstrate that the movant is entitled to no relief. A defendant may not simply file a motion for postconviction relief containing conclusory allegations that his or her trial counsel was ineffective and then expect to receive an evidentiary hearing. The defendant must allege specific facts that, when considering *1087 the totality of the circumstances, are not conclusively rebutted by the record and that demonstrate a deficiency on the part of counsel which is detrimental to the defendant.
LeCroy, 727 So.2d at 239 (quoting Kennedy v. State, 547 So.2d 912, 913 (Fla.1989)).
The circuit court below examined at length Washington’s claim of ineffectiveness of guilt phase counsel and ruled as follows:
Although no evidentiary hearing was ordered as to these guilt phase issues of ineffectiveness, at the evidentiary hearing that was held on ineffectiveness of counsel at the penalty phase, defendant’s trial counsel gave their credentials. Frank Louderback had been an attorney since 1975. Since 1980, he had a practice devoted to criminal defense. By 1990, he had tried 25 first-degree murder trials, and had been involved in 50 first-degree murder cases. Defendant’s co-counsel, Tom MeCoun is presently a Federal Magistrate Judge for the Middle District of Florida. He joined the Florida Bar in 1977. He was an assistant state attorney for three years, and then from 1980-1990 was in partnership with Mr. Louderback specializing in criminal defense work. At the time of defendant’s trial, he had participated in 20-30 first-degree murder trials. As a trial judge with over ten years experience on the criminal bench, and a prior criminal defense attorney for over eight years, I know that these two attorneys were two of the best Pinellas County had to offer. The Index to the record on appeal shows they prepared well for this case by deposing state’s witnesses, requesting expert witnesses of their own, filing appropriate motions, etc. The trial transcript shows they did an admirable job at defendant’s trial in advocating defendant’s claim that he was innocent of the crimes charged, and that he was at the Largo Work Release Center when the crimes were committed.
No singular claim made by the CCRC, nor the collective claims made warranted an evidentiary hearing, as they were either refuted by the record, were erroneous, or were not cognizable in a 3.850 motion. As to all claims ... dealing with ineffective assistance of counsel at the guilt phase of his trial, they are hereby denied. I specifically find defendant’s counsel, Frank Louderback and Tom MeCoun, were effective counsel. Further, this court is confident in the outcome of the guilt phase of the trial and is not persuaded that the issues claimed, singularly or collectively, undermine this court’s confidence in the outcome of the guilty verdicts. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), requires both ineffectiveness of counsel’s performance and prejudice to warrant relief. Defendant has not satisfied either prong of the Strickland v. Washington standard, and is therefore, not entitled to a new guilt/innocence determination.
Based on the foregoing and our review of the record, we conclude that the circuit court properly applied the law and did not err in summarily denying Washington’s claim that trial counsel was ineffective during the guilt phase of the trial.
As for Washington’s claim that trial counsel was ineffective for failing to request a Frye hearing on the DNA evidence, this issue is procedurally barred; it was not raised below in his rule 3.850 motion.[8] Washington’s remaining rule *1088 3.850 claims also are procedurally barred.[9]
III. HABEAS CORPUS
The trial in the present case took place on July 14-17,1992. Lead defense counsel was Mr. Louderback, who hired Mr. McCoun to handle two aspects of the trial, i.e., the DNA issue (in the guilt phase of the trial), and the penalty phase of the trial. At the commencement of trial, the original judge in this case, Judge Downey, was replaced by Judge Susan Schaeffer. The FBI technician who performed the DNA tests, Anne Baumstark, did not testify at trial; her supervisor, Special Agent Dwight Adams, did testify. Appellate counsel was Mr. Moeller.
—(Feb. 12) Defense counsel filed a motion to compel the disclosure of records pertaining to DNA testing; (Feb. 25) the court held a hearing on the motion; (Feb. 28) the court entered an order requiring the State to furnish the following information within five days: the identity of the person who performed the DNA analysis, a statement of how the analysis was performed, the qualifications of the person performing the analysis, the database figures relied upon by the FBI, an indication of any problems encountered, and the computations, results, and conclusions in the present tests.
—(Mar. 17) Defense counsel filed a second motion to compel the disclosure of DNA records, noting that some FBI records had been received but that others -had not; (Mar. 17) the court held a hearing; (April 2) the court entered an order (a) noting that the parties had reached certain agreements concerning the request, and (b) requiring the State to furnish the name of each person performing any portion of the DNA testing.
Prior to trial, defense counsel filed four “motions to compel” concerning the State’s production of DNA evidence,[10] and at the commencement of trial, counsel filed a “motion in limine” on the DNA issue.[11] At trial, FBI Special Agent Adams testified for the State concerning DNA evidence. On appeal, appellate counsel claimed that the trial court erred in failing to. allow trial counsel to depose FBI technician Baumstark and in admitting the testimony of Adams without the laying of a proper predicate. This Court found no error in either regard.[12] Washington now *1089 claims that appellate counsel was ineffective because he failed to argue that the trial court erred in not holding a Frye hearing concerning the admissibility of the DNA evidence. We disagree.
*1088 —(May 14) Defense counsel filed a motion to compel technician Baumstark to participate in a deposition and to compel the disclosure of Baumstark's and Adams’s bench notes; (May 20) the court held a hearing; (May 22) the court granted the motion to compel submission of the bench notes and the court noted that the request for deposition was withdrawn pending receipt of the bench notes.
—(June 3) Defense counsel filed a motion to compel the disclosure of the deposition of Baumstark; (June 9) the court held a hearing; (June 11) the court denied the motion because the State did not intend to call Baumstark as a witness.
*1089 The Court in Rutherford v. Moore, 774 So.2d 637 (Fla.2000), articulated the following standard:
When analyzing the merits of [an ineffective assistance of appellate counsel] claim, “[t]he criteria for proving ineffective assistance of appellate counsel parallel the Strickland standard for ineffective trial counsel.” Thus, this Court’s ability to grant habeas relief on the basis of appellate counsel’s ineffectiveness is limited to those situations where the petitioner establishes first, that appellate counsel’s performance was deficient because “the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance” and second, that the petitioner was prejudiced because appellate counsel’s deficiency “compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.”
Rutherford, 774 So.2d at 643 (footnote and citation omitted).
 To satisfy the first, or “deficiency,” prong of the above standard, a defendant must show that counsel “made errors so serious that counsel was not functioning as the ‘counsel’ guaranteed the defendant by the Sixth Amendment.”[13] Counsel’s performance is judged by a general reasonableness standard: “[T]he proper standard for attorney performance is that of reasonably effective assistance.”[14] *1090 Further, “a court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance.”[15]
In the present case, Washington has not shown that appellate counsel rendered deficient performance by failing to raise Frye on appeal. Trial counsel did not mention Frye in the proceedings below. First, as noted above, trial counsel’s four pretrial motions were all motions to compel, not motions to exclude. Neither Frye nor the principles underlying Frye were implicated in those motions or in the hearings on the motions. Second, although one paragraph in the motion in limine questioned the validity of the FBI’s DNA testing procedures and statistical analyses,[16] trial counsel presented this issue to the trial court in the context of Baumstark’s unavailability for questioning, i.e., counsel claimed that he could not challenge the validity of the tests performed by Baumstark because she was unavailable for questioning.[17] At
no point did trial counsel raise Frye as an issue or request a hearing on the general soundness of the FBI’s testing procedures. Thus, counsel did nothing to put the court on notice that Frye was at issue in this case.
Appellate counsel cannot be deemed deficient for failing to raise an issue that was not raised or preserved at trial.[18] Further, Moeller, an assistant public defender in Bartow, filed in this Court both an exhaustive seventy-four page initial brief, raising nine issues, and a twenty-one page reply brief, addressing six of the original nine issues. (As noted above, Moeller raised the DNA issue in the context of Baumstark’s unavailability for questioning and the State’s failure to establish a predicate for Adams’s testimony, both matters that had been broached at trial.) He argued the appeal competently before this Court and prevailed on two of the issues.[19] Based on this record, Moeller at a minimum rendered “reasonably effective representation” under Strickland. *1091 Thus, we find this claim to be without merit. Washington’s remaining habeas claim also is without merit.[20]
IV. CONCLUSION
Based on the foregoing, Washington’s rule 3.850 claims are without merit or procedurally barred. His habeas claims are without merit. Accordingly, we affirm the circuit court’s denial of rule 3.850 relief and deny his petition for a writ of habeas corpus.[21]
It is so ordered.
ANSTEAD, C.J., SHAW, WELLS, PARIENTE, and LEWIS, JJ, and HARDING, Senior Justice, concur.
QUINCE, J., recused.

. See Washington v. State, 653 So.2d 362 (Fla.1994).

. The court found that the following aggravating circumstances were established: Washington was under sentence of imprisonment at the time of the crime; he had a prior violent felony; he was engaged in a burglary and sexual battery at the time of the crime; and the crime was especially heinous, atrocious, or cruel (i.e., HAC).

.The court found that the following nonstatu-tory mitigating circumstances were established: Washington loved his mother; he had a high school diploma; and he had engaged in sports during his high school years.

.Washington raised the following issues on direct appeal: (1) the State improperly peremptorily excused a black prospective juror; (2) the trial court should have suppressed the blood sample; (3) the identification of Washington by Leacock (who bought the victim's watch from Washington) should have been suppressed; (4) the DNA evidence was improperly admitted; (5) there was insufficient evidence to support Washington's guilt; (6) the HAC aggravating circumstance was vague; (7) the death sentence was improperly imposed; (8) Washington should not have been sentenced as a habitual violent felony offender; (9) one of the two written judgments filed was extraneous and must be stricken.

. Washington makes the following claims: (1) ineffective assistance of penalty phase counsel; (2) ineffective assistance of guilt phase counsel; (3) the jury override was unwarranted; (4) the jury instructions were invalid; (5) the death sentence rests on an automatic aggravating circumstance; (6) the trial proceedings were fraught with error; (7) Florida's capital scheme is invalid.

. Washington makes the following claims: (1) appellate counsel should have requested a hearing on the admissibility of the DNA evidence under Frye v. United States, 293 F. 1013 (D.C.Cir.1923); (2) Washington may be incompetent at the time of execution.

. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

. See Steinhorst v. State, 412 So.2d 332, 338 (Fla.1982) ("Except in cases of fundamental error, an appellate court will not consider an issue unless it was presented to the lower court.”); see also Bertolotti v. Dugger, 514 So.2d 1095, 1096 (Fla.1987) ("In order to *1088 preserve an issue for appellate review, the specific legal argument or ground upon which it is based must be presented to the trial court.”).

. Washington’s remaining claims are allegations of trial court error; such claims generally are not cognizable in a rule 3.850 motion. See Bruno v. State, 807 So.2d 55, 63 (Fla.2001) ("A claim of trial court error generally can be raised on direct appeal but not in a rule 3.850 motion....”).

. Defense counsel filed the following motions to compel; the trial court held the following hearings and disposed of the motions thusly:

. At the beginning of the trial, defense counsel filed a motion in limine seeking to exclude DNA evidence on the following bases: DNA test information requested by defense counsel had been denied by order of the court; the FBI’s testing procedures and statistical analy-ses were defective and not generally accepted within the scientific community; the evidence was irrelevant and prejudicial; and introduction of the evidence would violate Washington’s Sixth Amendment right to confront his accusers. -The motion was denied following discussion of the issue at trial.

. This Court ruled as follows on the DNA issue that was raised on appeal:
In this fourth issue, Washington asserts that the trial court erred in not allowing *1089 him to depose Anne Baumstark, the DNA technician, and that the state, by not calling Baumstark as a witness, failed to lay a proper predicate for admission of the DNA test results. Florida Rule of Criminal Procedure 3.220 states that a defendant may not depose a person that the prosecutor does not, in good faith, intend to call at trial and whose involvement with the case and knowledge of the case is fully set out in a police report or other statement furnished to the defense. The record reflects that the state did not intend to call Baumstark as a witness; that Baumstark submitted an affidavit which stated that she had conducted over 1200 DNA tests, had no specific recollection of Washington’s test, and would have to rely on lab notes to discuss the testing procedure. Based on our review of the record, we find that the state satisfied the requirements of rule 3.220. We also find no abuse of discretion in the court’s admission of the DNA test results. When previously faced with this issue, we stated that:
In admitting the results of scientific tests and experiments, the reliability of the testing methods is at issue, and the proper predicate to establish that reliability must be laid. If the reliability of a test’s results is recognized and accepted among scientists, admitting those results is within a trial court’s discretion. When such reliable evidence is offered, "any inquiry into its reliability for purposes of admissibility is only necessary when the opposing party makes a timely request for such an inquiry supported by authorities indicating that there may not be general scientific acceptance of the technique employed.”
The DNA test results were presented through the testimony of FBI Special Agent Dwight Adams, Baumstark’s supervisor. Adams testified as to the scientific reliability of the tests, interpreted the DNA test results, worked as a team with Baumstark, and supervised her as she conducted the actual test. Adams’s familiarity with the test, his supervision over Baumstark's work, and Baumstark’s affidavit laid a proper predicate for admission of the DNA test results.
Washington v. State, 653 So.2d 362, 365 (Fla.1994) (citations omitted).

. Strickland, 466 U.S. at 687, 104 S.Ct. 2052.

. Id.

. Id. at 689, 104 S.Ct. 2052.

. The third paragraph in Washington's motion in limine reads as follows:
3) The DNA analysis performed by the FBI, although purporting to be generally acceptable within the scientific community, is still insufficient and inadequate and not as yet acceptable within the scientific community as a basis for use as forensic evidence in a criminal prosecution. The FBI DNA procedures lack sufficient safeguards, quality control, and procedural regularity to allow the admission of any test results. Additionally, the FBI purports to provide statistical probabilities in relation to the testing procedures done. The databases which comprise the FBI’s statistical database are insufficient to allow for such statistical probability. The lack of sufficient subgroupings, for instance, in black male populations is a serious deficiency which destroys the reliability of any statistical probability conclusions as brought by the FBI. Similar to the actual testing itself, statistical probability analysis performed by the FBI is subject to substantial criticism within the scientific community and cannot be said to be substantially acceptable within the scientific community, nor, given the database deficiencies can it be found to be relevant.

. The trial court noted the following: Baumstark was unavailable to defense counsel for deposition because the State did not intend to call her as a witness; she was unavailable to the defense as a witness because she was a non-resident of Florida and could not be compelled by a Florida court to appear as a witness in a Florida proceeding; and although the trial court issued a subpoena for her appearance, she declined to honor the subpoena. (According to the party’s briefs, FBI policy bars their DNA technicians from appearing in court as witnesses; the DNA supervisors, on the other hand, will voluntarily appear as witnesses.)

. See, e.g., Rutherford v. Moore, 774 So.2d 637, 646 (Fla.2000) ("We have repeatedly held that appellate counsel cannot be considered ineffective for failing to raise issues which ... were not properly raised at trial.” (internal quotation marks omitted).

. This Court concluded that Washington had been improperly sentenced as a habitual vio *1091 lent felony offender and that the trial court improperly entered two written judgments of conviction.

. See Hall v. Moore, 792 So.2d 447, 450 (Fla.2001), cert. denied, 534 U.S. 1136, 122 S.Ct. 1082, 151 L.Ed.2d 982 (2002).

. The United States Supreme Court in Ring v. Arizona, 536 U.S. 584, -, 122 S.Ct. 2428, 2443, 153 L.Ed.2d 556 (2002), recently held unconstitutional the Arizona capital sentencing statute "to the extent that it allows a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for imposition of the death penalty.” Washington does not raise Ring as an issue in the present proceeding, and accordingly we do not decide whether Ring is applicable to Florida cases wherein the sentencing judge overrides a jury recommendation of life imprisonment.