907 So.2d 512 (2005)
Anthony WASHINGTON, Appellant,
v.
STATE of Florida, Appellee.
No. SC04-15.
Supreme Court of Florida.
May 12, 2005.
Rehearing Denied July 7, 2005.
*513 Bill Jennings, Capital Collateral Regional Counsel  Middle Region, Richard E. Kiley and James V. Viggiano, Jr., Assistant CCRC's, Tampa, FL, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, FL, and Robert J. Landry, Assistant Attorney General, Tampa, FL, for Appellee.
PER CURIAM.
Anthony Washington appeals a circuit court order denying his motion for postconviction relief under Florida Rule of Criminal Procedure 3.851. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. We affirm.

Facts
The facts of the underlying crime are set forth in the Court's opinion on direct appeal. See Washington v. State, 653 So.2d 362 (Fla.1994) (hereinafter Washington I). In 1989, Alice Berdat was found beaten to death in her bedroom. Washington, who was an inmate at a local work-release center, was arrested, tried, and convicted of first-degree murder, sexual battery, and burglary with a battery. The trial court overrode the jury's life recommendation and imposed a death sentence based on four aggravating circumstances,[1] no statutory mitigating circumstances, and three nonstatutory mitigating circumstances.[2] Washington appealed and the Court affirmed. See id. Washington filed a motion under Florida Rule of Criminal Procedure 3.850, and the circuit court denied relief following an evidentiary hearing. Washington appealed and also filed a petition for writ of habeas corpus. The Court affirmed the denial of rule 3.850 relief and denied habeas relief. See Washington v. State, 835 So.2d 1083 (Fla.2002) (hereinafter Washington II). Washington then filed the present successive rule 3.851 motion, and the circuit court denied relief. Washington appeals.

Washington's Claims
Washington claims that the override in this case is unlawful under Keen v. State, 775 So.2d 263 (Fla.2000), and related cases. We disagree. The judge in Keen overrode the jury's life recommendation and imposed a death sentence, reasoning as follows:
Had the jury considered the aggravating and mitigating circumstances, the facts suggesting a sentence of death are so clear and convincing that virtually no reasonable person could differ. The mitigating evidence is wholly insufficient to outweigh the aggravating circumstances in support of a life sentence.

Id. at 283 (quoting sentencing order). This Court vacated Keen's death sentence, ruling that the judge had erred in intermixing the legal standard for a life recommendation with the standard for a death recommendation:

*514 The singular focus of a Tedder[3] inquiry is whether there is "a reasonable basis in the record to support the jury's recommendation of life," rather than the weighing process which a judge conducts after a death recommendation.
Keen, 775 So.2d at 283 (citation omitted). The Court noted that the jury reasonably could have considered: (a) the State's disparate treatment of an accomplice; (b) the accomplice's credibility problems in testifying against Keen; and (c) Keen's potential for rehabilitation as demonstrated by his otherwise productive life and good prison record.
Washington contends that the judge in the present case made the same mistake that the judge made in Keen. Here, the judge reasoned as follows:
[T]he law and the evidence in this case compel me to find that the aggravating circumstances present in this case so far outweigh the mitigating circumstances that a sentence of death for Anthony Washington is so clear and convincing that virtually no reasonable people, armed with all the facts and all the law, could differ.
(Emphasis added.) Based on the above language, we conclude that Washington is correct on this point: the judge here, as in Keen, intermixed the standards for life and death recommendations. Washington, however, is not entitled to relief on this claim for several reasons.
First, Washington failed to raise this claim in his present rule 3.851 motion, and he is procedurally barred from raising it now. See Thomas v. State, 838 So.2d 535, 539 (Fla.2003); Washington II, 835 So.2d at 1087. Second, the Court already has addressed the applicability of Keen on collateral review and has held that Keen was "[nothing] more than an application of our long-standing Tedder analysis." Mills v. Moore, 786 So.2d 532, 540 (Fla.2001) ("Keen is not a major constitutional change or jurisprudential upheaval of the law as it was espoused in Tedder. Keen offers no new or different standard for considering jury overrides on appeal."). Thus, Washington could and should have raised this claim at trial or on direct appeal, as did Keen, and it cannot now be presented in this rule 3.851 proceeding. Cf. Fla. R.Crim. P. 3.850(c). And third, on the merits, any error in this regard was harmless. Whereas in Keen there was ample mitigating evidence on which the jury reasonably could have based a life recommendation, here there was none. See Washington I, 653 So.2d at 366.

Conclusion
Based on the foregoing, we conclude that Washington is not entitled to relief under Keen v. State, 775 So.2d 263 (Fla.2000), and related cases. Nor is he entitled to relief under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). See Johnson v. State, 904 So.2d 400 (Fla. 2005) (holding that Ring does not apply retroactively in Florida). We affirm the circuit court order denying Washington's rule 3.851 motion.
It is so ordered.
WELLS, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
LEWIS, J., concurs with an opinion.
PARIENTE, C.J., concurs in result only.
ANSTEAD, J., dissents.
LEWIS, J., concurring.
I reiterate my concern that a trial judge's override of a jury's life recommendation *515 stands in apparent "irreconcilable conflict" with the holding of Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002):
If Apprendi[[4]] and Ring support the proposition that it is unconstitutional for a trial judge to independently find fact with regard to aggravators and impose a sentence of death without jury involvement, surely the Supreme Court's Spaziano[[5]] decision authorizing a trial judge's complete disregard for a sentencing jury's recommendation based upon jury findings of aggravating factors cannot now stand. I cannot avoid the conclusion that if Ring mandates penalty phase jury findings for the imposition of capital sentences, a trial judge may not simply dismiss the jury's recommendation based upon these findings and do precisely what Ring prohibits. A trial court simply cannot sentence a defendant to death through findings of fact rendered completely without, and in the case of a jury override, directly contrary to, a jury's advice and input. As has been noted by this Court in the past, a "jury's life recommendation changes the analytical dynamic," and under Ring, this life recommendation must be respected. Thus, this is not only an asserted irreconcilable conflict, in my view it is a conflict we should acknowledge.
Bottoson v. Moore, 833 So.2d 693, 727-28 (Fla.2002) (Lewis, J., concurring in result only) (citation omitted). Nevertheless, in the present case, I agree that Ring is inapplicable, as explained below.
The United States Supreme Court in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), was confronted with the issue of whether a judge, sitting without a jury, could conduct the fact-finding necessary to enhance a defendant's sentence by two years under a "hate-crimes" statute. In conducting its analysis, the Supreme Court first acknowledged the importance of the interests that were at stake, see id. at 476, 120 S.Ct. 2348 ("At stake in this case are constitutional protections of surpassing importance."), and the Court then announced a bright-line rule of law that would protect those interests appropriately: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490, 120 S.Ct. 2348.
Two years later, the United States Supreme Court in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), applied Apprendi's bright-line rule to capital cases, holding as follows: "Because. . . aggravating factors operate as `the functional equivalent of an element of a greater offense,' the Sixth Amendment requires that they be found by a jury." Ring, 536 U.S. at 609, 122 S.Ct. 2428 (citation omitted). The Court explained further:
The right to trial by jury guaranteed by the Sixth Amendment would be senselessly diminished if it encompassed the factfinding necessary to increase a defendant's sentence by two years, but not the factfinding necessary to put him to death.
Id. Based on language in both Apprendi and Ring, the holding of Ring appeared to implicate constitutional interests of the highest order and seemed to go to the very heart of the Sixth Amendment. And yet, two years after Ring was decided, the *516 Supreme Court appears to have somewhat altered the foundation.
When asked to decide the retroactivity of Ring, the United States Supreme Court in Schriro v. Summerlin, 542 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004), first explained that "[t]his holding [in Ring] did not alter the range of conduct Arizona law subjected to the death penalty" and that Ring therefore was procedural rather than substantive. Id. at 2523. Second, the Court relied upon its own prior decision in DeStefano v. Woods, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968) (declining to give retroactive application to a 1968 decision that extended the jury-trial guarantee to the states), and concluded that Ring did not establish a "watershed rule[] of criminal procedure":
If under DeStefano a trial held entirely without a jury was not impermissibly inaccurate, it is hard to see how a trial in which a judge finds only aggravating factors could be.
Summerlin, 124 S.Ct. at 2526. The Court then held: "Ring announced a new procedural rule that does not apply retroactively to cases already final on direct review." Id.
Based on Summerlin  as surprising as that decision may be[6] in light of the Supreme Court's own prior language in Apprendi and Ring  I can only conclude that Ring cannot be applied retroactively in Florida even upon application of our Witt[7] analysis. The United States Supreme Court is the ultimate arbiter of the federal constitution, and the decision in Ring is that Court's own Sixth Amendment interpretation and application. If the United States Supreme Court has held and stated that Ring is not a "watershed rule[] of criminal procedure" but merely a "new procedural rule that does not apply retroactively," then I am precluded from determining that these decisions are of fundamental significance, significant magnitude or constitute a "jurisprudential upheaval" under Florida law, even though if writing upon a clean slate I would certainly do so. Further, the purpose served by a new rule of law is a key factor in determining retroactivity in Florida,[8] and the United States Supreme Court in DeStefano held that the purpose served by the jury-trial guarantee ("to prevent arbitrariness and repression") "favor[s] only prospective application" of that guarantee to the states.[9] Therefore, I cannot logically say that the purpose served by the jury fact-finding requirement of Apprendi and Ring favors a different treatment in this regard. The interpretations of the concepts discussed in Apprendi and Ring by the United States Supreme Court drive my consideration that Ring cannot be classified as being of fundamental significance or of significant magnitude to cause retroactive application.
Based on the foregoing and Johnson v. State, 904 So.2d 400 (Fla. 2005), I must *517 agree that Ring is inapplicable in this postconviction case.
NOTES
[1] The court found that the following aggravating circumstances were established: Washington was under sentence of imprisonment when he committed the murder; he had a prior violent felony conviction; he was engaged in a burglary and sexual battery when he committed the murder; and the murder was especially heinous, atrocious, or cruel (HAC).
[2] The court found that the following nonstatutory mitigating circumstances were established: Washington loved his mother; he had earned a high school diploma; and he had engaged in sports during his high school years.
[3] Tedder v. State, 322 So.2d 908 (Fla. 1975).
[4] Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).
[5] Spaziano v. Florida, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984).
[6] Cf. Apprendi, 530 U.S. at 538, 120 S.Ct. 2348 (O'Connor, J., dissenting) (terming the majority's reasoning in Apprendi "baffling, to say the least").
[7] Witt v. State, 387 So.2d 922 (Fla.1980).
[8] See id. at 926 (holding that the retroactivity of a new rule of law may be determined by assessing (a) the purpose served by the new rule; (b) the extent of reliance on the old rule; and (c) the effect on the administration of justice of retroactive application of the new rule).
[9] See DeStefano, 392 U.S. at 633, 88 S.Ct. 2093 (explaining that the "purpose" served by a new rule of law is one of three factors for determining retroactivity under Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), and then holding that "[a]ll three factors favor only prospective application" of the jury-trial guarantee to the states).