651 So.2d 1169 (1995)
Kenneth CHAKY, Appellant,
v.
STATE of Florida, Appellee.
No. 81325.
Supreme Court of Florida.
March 2, 1995.
*1170 Nancy A. Daniels, Public Defender and David A. Davis, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen. and Gypsy Bailey, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Kenneth Chaky appeals his convictions of first-degree murder and solicitation to commit first-degree murder and his respective sentences of death and thirty years' imprisonment. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. For the reasons expressed, we affirm Chaky's convictions and sentence of thirty years' imprisonment, but we reverse his sentence of death and remand this cause for imposition of a life sentence without eligibility for parole for twenty-five years.
Patricia Chaky's body was found at a trash dump in Gainesville. She had died from two very forceful blows to the back of her head. After the murder was investigated, Kenneth Chaky, the victim's husband of sixteen years, was charged and convicted of first-degree murder and solicitation to commit first-degree murder. At trial, the State presented evidence supporting the following account of the murder. In August 1991, Chaky told Barney Feinberg that he wanted to kill his wife. Chaky and Feinberg had several discussions about this issue, and Chaky asked Feinberg to kill Chaky's wife. Feinberg declined. Chaky eventually talked to Feinberg about how to dispose of his wife's body once she was killed and mentioned putting the body in the trunk of the car and then burning the car. Although Feinberg never agreed to dispose of the body, he did recruit one of his employees, Charlie Thompson, to burn the car. Thompson understood that he would receive $500 in automobile insurance money for burning the car.
Around October 24, 1991, Chaky visited Feinberg's auto shop and told Feinberg that he would be back after he got the "package" ready. At that point Feinberg did not know what the package was. About an hour later, Chaky returned and Thompson, without knowing that a body was in the trunk, got in Chaky's car to drive Chaky home so Thompson could dispose of the car. After Thompson took Chaky home, he decided to abandon the car rather than burn it. Before doing so, however, he looked through the car to see if anything of value was contained in it. After opening the trunk, he discovered the body. He then returned to Feinberg's shop to tell him there was a body in the trunk. Feinberg told him to remove the car from his property, at which point Thompson decided to leave the car at some dumpsters where police would find it.
After Thompson abandoned the car, a deputy found it blocking the dumpsters and contacted Chaky to come and move the car. After being contacted by the deputy, Chaky told him that his wife had left him the previous evening and was driving that car. He further stated that he thought she might be at a friend's house. Chaky followed the deputy to the dumpsters and moved the car so that it would not obstruct parking. He told the deputy he would return later to get it.
After Chaky moved the car, he went back to Feinberg's shop to ask what happened. Feinberg agreed at this point to help Chaky dispose of the body, and he and Chaky went to the dumpsters and retrieved the car. Chaky then followed Feinberg to a trash dump, where Feinberg left Chaky to dispose of the body. Subsequently, Chaky reported his wife as missing. The victim's body was discovered several days later. After police started investigating the murder, Chaky told Feinberg that he would "take care of" him if he kept his mouth shut. Feinberg took this to mean that he would receive some insurance money.
Additional evidence was presented to show that Chaky had increased the amount of the life insurance for his family several times in the last few years, with the last increase occurring in April 1991. At that time, he had life insurance on himself in the amount of $375,000 and on his wife in the amount of $185,000.
Chaky testified in his defense. He admitted killing his wife, and his version of the events was similar to that presented by the State. He maintained, however, that he *1171 killed his wife in self-defense during a domestic argument and that he never discussed killing his wife with Feinberg. He also denied killing his wife to obtain any insurance money.
The jury convicted Chaky of both first-degree murder and solicitation to commit first-degree murder.
During the penalty phase portion of the trial, the State introduced a certified copy of Chaky's prior violent felony conviction (attempted murder) that occurred during his military service in Vietnam in 1971. In his defense, Chaky introduced a psychiatrist who testified that: Chaky was being treated for depression; Chaky's employer and family had good things to say about him; he was a good candidate for rehabilitation; and he exhibited some remorse. Chaky testified that he did not kill his wife to collect on the life insurance, stating that the money was to be paid to his sister as guardian of his two children. The defense also established that the prior violent felony occurred in South Vietnam in 1971 during the war and involved a hand grenade incident in which Chaky was guarding a witness and meant to throw the grenade close enough to scare a soldier who was threatening the witness, but not close enough to injure the soldier. No one was injured and Chaky pleaded guilty to the charge to receive a reduced sentence. After serving two years for the incident, he was restored to active duty and eventually was honorably discharged. Chaky's daughter testified that she witnessed physical confrontations between her father and mother that were usually started by her mother, and that Chaky was a good father to her and her younger brother.
The jury voted to impose the death penalty by a nine-to-three vote. The trial judge found two aggravating circumstances: (1) prior violent felony, and (2) committed for financial gain. He also found two factors in mitigation: (1) that Chaky had made a contribution to his community or society as evidenced by his exemplary work, military, and family record, and (2) that he had remorse and potential for rehabilitation and a good prison record. Finding that the two aggravating circumstances outweighed the two mitigating circumstances, the trial judge imposed a sentence of death. Additionally, the trial judge sentenced Chaky to thirty years in prison for his conviction of solicitation to murder the victim.
In this appeal, Chaky raises four issues.[1] First, Chaky contends that the trial judge erred in allowing the court reporter to read only a portion of a witness's testimony to the jury after the jury requested a reading of the testimony. The record reflects that, after the jury began deliberations, it asked the judge to reread the testimony of Charlie Thompson. After the trial judge granted the request, the court reporter read through the portion of Thompson's direct testimony where he decided to leave the car at the dumpsters so that law enforcement officers would find it. At that point, the jury foreman stopped the reading of the testimony and stated: "Your Honor, I think we have heard what we wanted." The trial judge asked: "You are satisfied, you have heard all of Charlie Thompson's testimony, that you need?" The foreman replied: "Yes, sir."
In essence, sixteen of the twenty pages of Thompson's direct testimony were read to the jury, and none of the cross-examination, redirect, or final recross pages were read to the jury. Chaky contends that the judge abused his discretion in acceding to the foreman's request because, under the circumstances, either all of the testimony should have been read or none of the testimony should have been read. The State, on the other hand, argues that this issue is procedurally barred because Chaky failed to object to the termination of the reading of the testimony as requested by the jury foreman and, consequently, failed to properly preserve this asserted error for appeal. We agree that the issue is procedurally barred. Lowe v. State, 650 So.2d 969 (Fla. 1994); Castor v. State, 365 So.2d 701 (Fla. 1978). The record reflects that Chaky's counsel initially objected to the reading of Thompson's testimony. When pressed by the State for a valid legal reason *1172 to support the objection, however, Chaky's counsel retracted the objection and stated: "I'm not objecting to it on the substantive ground." Additionally, while Chaky's counsel did express some concern about whether all or only a portion of the testimony would be read, he failed to reiterate these concerns through a proper objection at the time the foreman said that the jury had heard all that it needed to hear.
In his second claim, Chaky argues that the trial judge erred in not reducing to writing the jury instructions for both the guilt and penalty phase proceedings, as required by Florida Rule of Criminal Procedure 3.390(b) and in not providing the jury with a copy of those instructions as allowed by rule 3.400(c). Rule 3.390(b) provides, in part:
Every charge to a jury shall be orally delivered, and charges in capital cases shall, and in the discretion of the court in noncapital cases may, also be in writing. All written charges shall be filed in the cause.
(Emphasis added.) Rule 3.400 provides in pertinent part:
The court may permit the jury, upon retiring for deliberation, to take to the jury room:
....
(c) any instructions given; but if any instruction is taken all the instructions shall be taken.
(Emphasis added.) We find that the use of the word "shall" in rule 3.390(b) makes that rule mandatory, while the use of the word "may" in rule 3.400 makes that rule discretionary. Delap v. State, 440 So.2d 1242 (Fla. 1983) (rule 3.400 is discretionary), cert. denied, 467 U.S. 1264, 104 S.Ct. 3559, 82 L.Ed.2d 860 (1984). As noted by Chaky, the trial judge did not put the instructions in writing and never filed those instructions as required by rule 3.390(b). Further, although the judge orally instructed the jury, he did not give the jury a copy of the instructions to follow as he read them or to take into the jury room, as allowed by rule 3.400(c). While the trial judge had the discretion to follow rule 3.400(c), his failure to follow rule 3.390(b) was clearly error. Once again, however, Chaky's counsel failed to preserve this error for appeal and, consequently, the issue is procedurally barred. See, e.g., McCaskill v. State, 344 So.2d 1276 (Fla. 1977) (error of trial judge in failing to comply with rule 3.390(b) is procedurally barred absent an objection). Moreover, even if the issue were not procedurally barred, we would find the trial judge's error in failing to follow rule 3.390(b) to be harmless beyond a reasonable doubt because the failure to put the instructions in writing and to file them in this cause had no effect on outcome of the jury's verdict. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). Consequently, we reject this claim. Given the nature of capital cases, however, we believe there is considerable merit to the claim that the time has come to require rule 3.400(c) to be mandatory rather than discretionary as that rule pertains to instructions in capital cases; therefore, we have promulgated for comment a proposed rule in In re Florida Rules of Criminal Procedure  Rule 3.400, Material to the Jury Room, No. 84,922 (Fla. Mar. 2, 1995), that would make the rule mandatory for instructions in capital cases. Should the rule be adopted, it will apply prospectively only.
In his third issue, Chaky contends that the evidence is insufficient to support, beyond a reasonable doubt, the aggravating circumstance of "committed the murder for pecuniary gain." This aggravating circumstances applies "only where the murder is an integral step in obtaining some sought-after specific gain." Hardwick v. State, 521 So.2d 1071, 1076 (Fla.), cert. denied, 488 U.S. 871, 109 S.Ct. 185, 102 L.Ed.2d 154 (1988). See also Peterka v. State, 640 So.2d 59 (Fla. 1994), cert. denied, ___ U.S. ___, 115 S.Ct. 940, 130 L.Ed.2d 884 (1995). Moreover, proof of this aggravating circumstance cannot be supplied by inference from circumstances unless the evidence is inconsistent with any reasonable hypothesis other than the existence of the aggravating circumstance. Simmons v. State, 419 So.2d 316 (Fla. 1982). The only evidence presented to support this aggravating circumstance was that Chaky, as a matter of course through his employment with the University of Florida, maintained two life insurance policies on his wife, totalling $185,000, *1173 and that he had increased this life insurance on a regular basis since his initial employment date with the university in 1985. Additional testimony indicated that fifty-percent of all employees with the university maintained similar policies and that the amount of insurance Chaky maintained on his wife was only half of the amount of life insurance he maintained on himself. Further, the last increase in his life insurance was initiated more than six months before he killed his wife. Although Chaky did tell Thompson and Feinberg that he would pay them for their assistance, Thompson assumed that he was to be paid from automobile insurance money obtained for burning Chaky's car and Feinberg was never told where the funds for payment would come from and was not told that he would be paid until after the murder occurred. Although one could surmise under these circumstances that Chaky killed his wife to obtain the insurance proceeds, we must conclude that the evidence in this record is insufficient to support that hypothesis beyond a reasonable doubt. See, e.g., Elam v. State, 636 So.2d 1312 (Fla. 1994); Hill v. State, 549 So.2d 179 (Fla. 1989); Simmons. Consequently, we find that the trial judge erroneously concluded that Chaky committed the murder for pecuniary gain.
Chaky contends in his last issue that the death penalty is not appropriate in this case. Given our finding that the aggravating circumstance of committed for pecuniary gain is not supported by the evidence in this case, we are now presented with only one valid aggravating circumstance: Chaky's 1971 conviction for attempted murder. While the State did prove the existence of that circumstance beyond a reasonable doubt, the circumstances surrounding that conviction mitigate the significant weight that such a previous conviction would normally carry. The conviction occurred during the Vietnam war in 1971 under unusual circumstances; Chaky served only two years for the offense; and, despite the conviction, Chaky was able to return to active duty after serving time for the conviction and was able to receive an honorable discharge upon leaving active duty. When considering this one remaining aggravating circumstance against the mitigating circumstances presented, we find that the death penalty in this case would be disproportionate. Compare Smalley v. State, 546 So.2d 720 (Fla. 1989) (death penalty disproportionate in light of the one aggravating circumstance of heinous, atrocious, or cruel and substantial mitigation); Lloyd v. State, 524 So.2d 396 (Fla. 1988) (death penalty not appropriate where evidence supported only one relatively weak aggravating circumstance but supported one strong mitigating circumstance); Proffitt v. State, 510 So.2d 896 (Fla. 1987); Caruthers v. State, 465 So.2d 496 (Fla. 1985); Rembert v. State, 445 So.2d 337 (Fla. 1984).
Accordingly, we affirm Chaky's convictions and sentence of thirty years' imprisonment, but we reverse his sentence of death and remand this cause for the imposition of a life sentence without eligibility for parole for twenty-five years.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] Chaky also raises several issues in his pro se "Amended Brief of Appellant." We find the issues raised therein to be procedurally barred or otherwise without merit.