702 So.2d 578 (1997)
James A. KIPPING, Appellant,
v.
STATE of Florida, Appellee.
No. 95-04795.
District Court of Appeal of Florida, Second District.
November 21, 1997.
*579 Bruce Robert Bryan, Syracuse, NY, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Wendy Buffington, Assistant Attorney General, Tampa, for Appellee.
BLUE, Acting Chief Judge.
James A. Kipping (hereinafter "Kipping" or "James") appeals his conviction and the departure sentence imposed. He brings four issues to this court for our consideration. In addition to his contention that the trial court improperly departed upward from the sentencing guidelines, he questions the sufficiency of the evidence to sustain his conviction, contends the trial court erred in its instructions to the jury, and asserts that he was denied a fair trial. Although we will touch briefly on all of these points, we find merit only in Kipping's argument that the trial court erred in imposing a departure sentence. Therefore, we affirm Kipping's conviction, but reverse and remand with directions that the trial court resentence him within the guidelines.
Kipping, along with his older brother, Robert Kipping (hereinafter "Robert"), and David D. Andrews (hereinafter "Andrews"), was charged with a scheme to defraud pursuant to section 817.034(4)(a), Florida Statutes (1989), and twenty-two counts of grand theft. All of the charges arose from the sale of dance lessons at two dance studios in Pasco County.
Robert was the primary owner of both dance studios involved in this prosecution. He first owned a studio in New Port Richey and later opened what was known as the Bayonet Point Studio. Robert made his younger brother, James, a co-owner of the Bayonet Point Studio. Andrews, a veteran of the dance studio business, was the sales manager at both studios. James had worked for a period of time as a dance instructor at his brother's studio in New Port Richey prior to the opening of Bayonet Point. Robert was clearly the person in charge of both operations or "the boss"; however, much of the day-to-day management was left to Andrews. It appears from the record that James, although a co-owner of one of the studios and active in the business, did not have the experience or the authority to override Robert's decisions and, as indicated earlier, much of the management fell upon Andrews.
Each of the threeRobert Kipping, James Kipping and David Andrewswere charged in one information with scheme to defraud and multiple counts of grand theft. The charges were based upon the tactics used in selling contracts for dance instruction. In proving criminal intent, the State relied upon the amount of money charged for dance lessons and other activities sponsored by the dance studios. Many of the students entered into multiple contracts and were charged amounts of money best described as outrageous. Students were encouraged and pressured to purchase additional dance lessons *580 long before they had completed paid lessons. They were encouraged to purchase the lessons based upon representations of their ability and predicted future mastery of ballroom dancing. In addition to lessons, the students were encouraged to purchase peripheral items such as trips, membership in clubs, and honorary awards. The selling of new lessons had little to do with the students' ability to dance or to improve significantly, but rather, was based on the students' financial ability and willingness to purchase more contracts.
Many witnesses testified about the pressure exerted to obtain their names on contracts. They also reported the loss of status they suffered at the studios when they failed to execute new contracts. Most of the witnesses expressed great remorse over the amount of money they had expended in seeking dance lessons. However, all agreed that although pressured, they had voluntarily entered into the contracts. They were also aware that the contracts provided the right to cancel within three business days of signing.
There were no allegations nor any proof that the contracts themselves were, per se, fraudulent. No proof was offered that the contracts contained hidden terms, failed to express the agreement of the parties, or were in any way illegal. The fraud allegations were based on the dance studios' tactics employed in inducing the signing of the contracts. Students were encouraged to sign-up for more and more dance lessons on the basis that they would become expert ballroom dancers when, in fact, most were incapable of achieving the promised results. It was implied, but not directly proven, that some of the contracts were sold at a time when the dance studios were suffering financially thus indicating that the defendants were aware that the services sold would never be provided. There were, in fact, several contracts in which lessons could not be provided by these studios because financial problems resulted in the studios closing.[1]
The above is only a short synopsis of the evidence presented at trial. During the eleven trial days, the State called more than thirty-three witnesses. Kipping and Andrews were the only defendants on trial. Robert had pleaded guilty to all charges and had been sentenced to five years in prison, followed by probation. The prison portion of his sentence was completed before this trial.
The trial court granted judgments of acquittal on five of the grand theft counts. All remaining charges were submitted to the jury. The jury returned verdicts of guilty on all of the remaining counts of theft and the charge of scheme to defraud as to both Andrews and Kipping. Based upon Cherry v. State, 592 So.2d 292 (Fla. 2d DCA 1991), Kipping could not be sentenced on both the scheme to defraud and the theft charges which formed the basis for the scheme to defraud. The sentencing guidelines recommended range was two and one-half to three and one-half years of incarceration. The permitted range was community control to four and one-half years' imprisonment. The court imposed a fifteen-year imprisonment sentence on the scheme to defraud conviction, an upward departure from the guidelines.
We find no merit in Kipping's argument that the trial court erred in instructing the jury nor in his claim that he was denied a fair trial. Kipping points to numerous examples of discretionary rulings which favored the prosecution in this matter, and a reading of the complete record may support the argument that the trial judge tended to favor the State in such rulings. However, we conclude Kipping was not denied a fair trial. We also note this was a highly charged and emotional case and the trial court was faced with an extremely zealous and aggressive prosecution team.
It is a close question as to whether there was sufficient evidence to support the conviction for scheme to defraud. Based on the number of witnesses and length of the trial, there was certainly an abundance, if not an excess, of evidence. However, a large quantity of evidence is not necessarily sufficient *581 evidence to support a criminal conviction. Here, the concern is with the proof of Kipping's felonious intent. The question is: When do sharp business practices cross the line that converts them from legal to illegal activities? This is not the first time this court has reviewed such a situation. See State v. Sapp, 492 So.2d 703 (Fla. 2d DCA 1986) (sheriff not guilty of theft for selling airplane to a third party who leased it to the sheriff's department, absent showing sheriff's department was deprived of use or value of money); Crawford v. State, 453 So.2d 1139 (Fla. 2d DCA 1984) (dispute between homeowner and rooferhomeowner unilaterally terminated contract, roofer then retained down paymentevidence insufficient to show roofer had criminal intent of theft). See also Stramaglia v. State, 603 So.2d 536 (Fla. 4th DCA 1992) (evidence that officer of road construction company failed to pay certain subcontractors and broke promises to pay full amount owed insufficient to support conviction of officer for grand theft); Szilagyi v. State, 564 So.2d 644 (Fla. 4th DCA 1990) (conduct of a legitimate business enterprise which fails insufficient evidence of felonious intent to sustain grand theft convictions).
From a moral standpoint, there can be no question that the victims were sold dance lessons which they did not need and, in some cases, could not afford. But, when does such conduct rise to the level that it constitutes fraud rather than salesmanship? There is no question that the facts in this case are shocking. If not illegal, the defendants' conduct toward the victims was certainly unethical and, by most standards, immoral. Most appalling was the evidence that the tactics used by the dance studios were, with some exceptions, standard practice within the industry. Many of the tactics used are set forth in section 501.143, Florida Statutes (1995), known as the "Dance Studio Act." Subsection six of the statute lists the prohibited practices, and provides for criminal penalties. Violations of the prohibited practices are punishable as first-degree misdemeanors.
There was no direct evidence of Kipping's involvement in the high-pressure selling which formed the basis for the scheme to defraud and the grand thefts. Even so, his involvement was sufficient that he must have had knowledge of the tactics employed at the dance studios. As the prosecutor stated at the sentencing of Kipping and Andrews, "If indeed they weren't perpetrating the crime, they were certainly standing watching the crime occurring and assisting in the crime." We conclude there was sufficient evidence to support the scheme to defraud conviction.
Having determined that the conviction should be affirmed, we now turn to the departure sentence for which the trial court gave eight departure reasons. If any one of the departure reasons is valid, we are required to affirm the departure sentence. The trial court also listed four "mitigating factors" in determining whether it should depart and referred to the upward departure reasons as aggravating factors. The guidelines in effect at the time Kipping committed his offenses did not contemplate the comparison of aggravating and mitigating factors, so we see no need to analyze the "mitigating" factors.
The eight enumerated departure reasons in the trial court's order are somewhat overlapping and, in some instances, include more than one reason. From the order, we have distilled eleven distinct departure reasons: (1) protection of the public; (2) the age of the victims; many of the victims were elderly; (3) the emotional trauma of the victims; (4) a large number of victims; (5) the period of time over which the criminal acts were perpetrated; (6) the victims were defenseless; (7) breach of trust; (8) agents and employees were utilized to increase the number of victims; (9) the victims were subjected to harassment; (10) the guidelines offer insufficient punishment; and (11) the crimes were perpetrated with a heightened degree of premeditation.
The State concedes, and we agree, that disagreement with the guidelines and heightened degree of premeditation (numbers 10 and 11) are invalid reasons for departure. See Scott v. State, 508 So.2d 335 (Fla. 1987); Taccariello v. State, 664 So.2d 1118 (Fla. 4th DCA 1995). The State also concedes that protection of the public and the age of the victims (numbers 1 and 2) are insufficient departure reasons unless coupled *582 with another valid reason. See Ready v. State, 657 So.2d 53 (Fla. 2d DCA 1995); Lattimore v. State, 571 So.2d 99 (Fla. 3d DCA 1990). Therefore, there is no need to analyze these two factors unless there exists another valid basis for departure in the remaining reasons.
Emotional trauma (number 3) fails for insufficiency of evidence. This departure reason is founded on the prosecution's theory that the victims were traumatized because of the amount of money they had spent on dance lessons. Emotional trauma is a permissible basis for departure only if the trauma arises from extraordinary circumstances not inherent in the charged crimes, or if the victim suffers from "a discernible physical manifestation resulting from the psychological trauma." State v. Rousseau, 509 So.2d 281, 284 (Fla.1987). There was no testimony presented here of the extreme emotional trauma, including serious physical symptoms, necessary to support this basis for departure.
The trial court's departure reasons for the number of victims and the time over which the crime charged was committed (numbers 4 and 5) are inherent in the charge of scheme to defraud and are therefore invalid departure reasons. See State v. Fletcher, 530 So.2d 296, 297 (Fla.1988) ("The facts that are essential to prove a statutory element of the crime are necessarily embodied in the recommended guidelines sentence.").
The State argues that the age of the victims (number 2) and their "defenselessness" (number 6) is a valid basis for departure when combined with a breach of trust (number 7). Although the victims were certainly under a great deal of pressure to purchase the dance lessons which constituted the charges in this case, almost to a person they testified that they knew they were not required to purchase the lessons. The victims further testified that they knew they had the right to cancel the contracts, which all contained a three-day cancellation provision. We conclude, therefore, that "defenseless" fails for insufficiency of evidence. Additionally, we conclude the record does not support a departure based on a breach of trust (number 7). Kipping's conviction was based on the activities of those employed by the dance studios. There was no evidentiary support for the trial court's conclusion that Kipping "fostered a position of trust with his victims and abused that position of trust in perpetuating the fraud." There was also insufficient evidence to support the departure reason that the victims were subject to harassment (number 9).
The departure reason based upon the utilization of agents or employees (number 8) was upheld as a valid basis for departure in Gitman v. State, 482 So.2d 367 (Fla. 4th DCA 1985). In Gitman, the defendant was the owner of a collection agency which was in the business of contracting with various businesses to collect bad debts or past due accounts. Over a period of time, the collection agents either completely failed to remit monies collected or remitted less than the amount collected on behalf of those businesses. The defendant paid bonuses to his collectors who collected and failed to report those collections, thus sharing the collected money. The scheme to defraud was carried out by the defendant himself, as well as through his employees.
In the case before us, there is little or no evidence that Kipping was directly involved in any of the sales resulting in the scheme to defraud charge. As stated previously, the fraud was based on the sales techniques used within the dance studio businesses. As charged and argued to the jury, Kipping's guilt was dependent upon the State's proof that those employed by the dance studios were committing fraud and that he should be held responsible. Based upon the way Kipping was charged and the way the evidence was presented to prove his guilt, we conclude that the use of agents and employees was inherent in the crime of scheme to defraud. Accordingly, the reason is an invalid basis for departure. See Fletcher, 530 So.2d at 297.
Having determined there was no error leading to Kipping's conviction, we affirm his conviction. Having determined each of the reasons given for departure from the sentencing guidelines is either invalid, not supported by the evidence, or inherent in the crime for which Kipping was convicted, we reverse the departure sentence and remand *583 this matter to the trial court for sentencing within the guidelines.
Conviction affirmed, sentence reversed, and remanded.
QUINCE and NORTHCUTT, JJ., concur.
NOTES
[1] There was evidence that other dance studios in the area had agreed to honor any contracts with remaining lessons.