916 So.2d 828 (2005)
James Frank PIZZO, Appellant,
v.
STATE of Florida, Appellee.
No. 2D03-4913.
District Court of Appeal of Florida, Second District.
July 22, 2005.
Rehearing Denied September 20, 2005.
*829 Bruce S. Rogow and Beverly A. Pohl of Bruce S. Rogow, P.A., Fort Lauderdale, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Anne Sheer Weiner, Assistant Attorney General, Tampa, for Appellee.
*830 ALTENBERND, Judge.
James Frank "Jimmy" Pizzo seeks review of his judgment and sentence for five counts of mortgage fraud, six counts of grand theft, and one count each of organized fraud, conspiracy to commit racketeering, and racketeering, which arose out of the operation of his family-owned home improvement business. We affirm Mr. Pizzo's conviction for racketeering. Because the jury instructions regarding mortgage fraud and conspiracy to commit racketeering were fundamentally erroneous, we reverse those convictions and remand for a new trial. We also reverse Mr. Pizzo's convictions for grand theft and organized fraud because dual convictions for those charges violate the prohibition against double jeopardy. Thus, on remand the trial court must grant a judgment of acquittal on the lesser of the two charges.

I. Factual Background

Mr. Pizzo started East Coast Exteriors, Inc., in 1997 in Vero Beach. East Coast Exteriors sold windows, soffits, fascia, and siding through telemarketing followed by direct sales to homeowners. The only officer and director of the new company was Mr. Pizzo's mother, Edwina, but her role was strictly nominal. Mr. Pizzo was the owner of the company and the ultimate decision-maker. Mr. Pizzo's wife, Rozlyn, worked as the office manager. Mr. Pizzo's father, James, supervised East Coast Exterior's work crews.
Eventually, Mr. Pizzo opened another East Coast Exteriors office in Manatee County, and customer complaints led to the charges in this case. The State charged Mr. Pizzo; his wife, Rozlyn; his father, James; and his mother, Edwina, with mortgage fraud, grand theft, organized fraud, conspiracy to commit racketeering, and racketeering.[1] The fraud charges were based on misrepresentations that the windows being sold were "Reynolds" windows when they were actually Caradon Better Bilt windows distributed by Reynolds Building Products; misrepresentations regarding East Coast Exteriors' history and capacity to do the work; and misrepresentations and omissions that resulted in liens and mortgages being recorded against customers' properties without their knowledge. The grand theft charges, which were only filed against Mr. Pizzo, were based on the fact that customers were sold the lesser-quality Caradon Better Bilt windows at a price they were quoted for "Reynolds" windows.
The evidence at trial established that East Coast Exteriors' telemarketers used scripts dictated by Mr. Pizzo in which they asserted that they represented "Reynolds." The telemarketers continued to make this misrepresentation even after a Reynolds Building Products branch manager asked Mr. Pizzo to have his staff refrain from using the name "Reynolds" in any capacity in their telemarketing and followed up with a "cease and desist" letter.
The sales representatives were all trained by Mr. Pizzo. They advised customers that East Coast Exteriors was a "very large company," in business "from 12 to over 20 years," having done "thousands of projects" without complaints. Sales representatives told customers that *831 they did not work on commission, though they did. They represented that the crew workers were salaried employees of East Coast Exteriors, trained by Reynolds, when in fact that was not true.
The sales representatives' primary tool was known colloquially as the "pitch book." The pitch book contained pictures of Reynolds products with the Reynolds Aluminum logo. It also contained what an agent of the Reynolds Metal Company called a "doctored letter" stating that East Coast Exteriors was the "exclusive authorized dealer for Reynolds Aluminum Vinyl Tuf building products, as well as a Reynolds Better-Bilt window distributor for Southeast Florida." The pitch book also contained a "doctored letter" regarding an award that was never given to East Coast Exteriors.
The Reynolds Metal Company agent concluded that Mr. Pizzo knew he was buying Caradon Better Bilt windows from Reynolds Building Products. However, Mr. Pizzo trained East Coast Exteriors' telemarketers and sales representatives to represent the windows as "Reynolds Better Bilt," and the pitch book contained a "warranty" for Better Bilt windows that contained the Reynolds logo.
East Coast Exteriors' sales representatives also offered various financing options to their customers who could not pay cash. In-house financing was available as was a retail mortgage through American General Finance or a consolidation loan through a mortgage broker. Sales representatives routinely convinced customers to obtain financing by calling Mr. Pizzo to obtain a quote for a low interest rate which the customer never received.[2] If a customer signed a retail mortgage or consolidation loan agreement, the lender acquired the right to record "UCC-1s," which imposed a lien against the property to which the fixture attached until the loan was satisfied.
The sales representatives took various financing forms, including the UCC-1s and certificates of completion, to the customers' homes and obtained signatures at the time the contracts were signed. Mr. Pizzo trained the sales representatives not to discuss the UCC-1s, and customers were not told that they would be used to impose a lien on their homes. Some were told that the UCC-1 was for "state taxes." The sales representatives were able to obtain some customers' signatures on the UCC-1s without their knowledge because the sales representatives were trained by Mr. Pizzo to present the forms in a bundle. The sales representatives convinced the customers to sign certificates of completion before the work was started by misrepresenting that it would speed up their financing. The sales representatives were not trained to inform the customers of their legal right to rescind the contract within seventy-two hours, and although required by law, this legal right was not mentioned in the forms provided to the customers. In their efforts to obtain customers' signatures without their knowledge of the purpose of the forms, the sales representatives did not obtain proper witness and notary signatures. Those signatures were provided after the forms were returned to the office.
American General required a copy of the sales contract, a loan application, and a certificate of completion signed by the customer prior to loan processing and the filing of a UCC-1. Mr. Pizzo's sales procedure allowed East Coast Exteriors to provide American General or the mortgage broker all of the paperwork required for *832 the filing of a UCC-1. Thus, liens were imposed against customers' property before they became aware of their true interest rate and before the work was complete. Because the customers signed certificates of completion before the work was even started, many of them had liens imposed, even though they were not satisfied with the work.

II. Issues on Appeal

Mr. Pizzo raises nine issues on appeal, three of which require reversal. We affirm without comment the issues regarding (1) the admission of bad acts evidence, (2) the admission of certain testimony of Special Agent Charles Leonard, (3) the denial of Mr. Pizzo's request for a special jury instruction on mortgage fraud, and (4) the oral delivery of the jury instructions on organized fraud. We reverse as to the issues regarding (1) the oral delivery of the jury instructions on mortgage fraud, (2) the instruction of the jury on conspiracy to commit racketeering, and (3) the adjudication for both organized fraud and grand theft and its double jeopardy implications. Our reversal renders Mr. Pizzo's remaining two issues regarding his sentence moot. However, we address these issues in order to assist the court on remand.

A. Jury Instructions-Mortgage Fraud

The trial court has a duty to orally deliver the jury instructions in their entirety. Fla. R.Crim. P. 3.390(b) ("Every charge to a jury shall be orally delivered, and charges in capital cases shall, and in the discretion of the court in noncapital cases may, also be in writing."). This rule is mandatory. Chaky v. State, 651 So.2d 1169, 1172 (Fla.1995).
This case involved a total of eighteen counts of criminal activity, and the conspiracy to commit racketeering and racketeering charges contained a total of twenty-two predicate incidents. As a result, the jury instructions were inevitably going to be complex. It is understandable that the trial court wanted to abbreviate the instructions so as to avoid repetition. However, due to the complex nature of the charges, it was imperative that the trial court give its oral delivery of the jury instructions in the least confusing way possible. We are not suggesting that it is fundamental error to fail to read each and every sentence of the jury instructions in such cases, but the manner in which the instructions were presented as to the mortgage fraud charges would leave the jury hopelessly confused.
The trial court read the mortgage fraud instruction in full only for count one, and that instruction in itself was somewhat confusing:
Before you can find the defendant James Frank Pizzo, also known as James Pizzo, Jr., guilty of the crime of mortgage fraud, the State must prove the following three elements beyond a reasonable doubt:
1. The defendant acted with intent to defraud John and/or Mary Maxwell.
2. The defendant obtained any mortgage note, promissory note, or other instrument evidencing a debt from any person, or the defendant obtained the signature of any person to any mortgage, mortgage note, promissory note, or other instrument evidencing a debt.
3. By color or aid of fraudulent or false representation or pretenses.
And they're not in the order that I put them in. Just a second. Does your next one begin, before you can find the defendant Roz guilty
MR. SMITH: Yes, sir.
THE COURT: It does?

*833 MR. SMITH: It should be.
THE COURT: Okay. You will see down further in your packet, about six or seven pages down, what should be the next instruction which is:
Before you can find the defendant James Frank Pizzo, also known as James Pizzo, Jr., guilty of the crime of mortgage fraud, the State must prove the following two elements beyond a reasonable doubt:
1. The defendant acted with intent to defraud Jack or  John or Mary Maxwell.
2. The defendant obtained the signature of any person to a mortgage, mortgage note, promissory note, or other instrument evidencing a debt by forgery.
Did you find that page?
Mr. Petty, you found it?
JUROR PETTY: Yeah.
THE COURT: Okay. Just slip that one behind that one I have read before. And what I want to point out to you then is that there are a number of ways to commit this crime and these two pages outline the three different ways that the crime can be committed. Okay?
The trial court then declined to read the jury instructions on the remainder of the mortgage fraud counts as follows:
Now, that's as to the Maxwells. That's one of the five counts of mortgage fraud.
The next instruction you should have deals with Naeher. Is that correct? I'm not going to read it to you, because they're all the same. So Naeher, then you have Porter, then you have Christenson, then you have Behrens, and those are the five counts for James Frank Pizzo.
Defense counsel did not object to the oral delivery of the mortgage fraud instructions, but we conclude that the error was fundamental as it pertained to the mortgage fraud counts because it "`reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.'" Globe v. State, 877 So.2d 663, 677 (Fla.2004) (quoting Lawrence v. State, 831 So.2d 121, 137 (Fla. 2002)). We note that the oral delivery of the remainder of the instructions was adequate. Accordingly, we reverse Mr. Pizzo's convictions for mortgage fraud and remand for a new trial on those charges.

B. Jury Instructions  Conspiracy

This court has previously held that it is fundamental error for the trial court to include the conjunction and/or between codefendants' names if it allows for a conviction of one codefendant based solely on a determination that the other codefendant's conduct met an element of the offense. Cabrera v. State, 890 So.2d 506, 507 (Fla. 2d DCA 2005); see also Rios v. State, 905 So.2d 931, 931 (Fla. 2d DCA 2005).
The written instructions for conspiracy to commit racketeering in this case provided, in pertinent part:
What the evidence in the case must show beyond a reasonable doubt before you may find the defendants James Frank Pizzo, AKA James Pizzo, Jr. and/or Rozlyn Pizzo and/or James Pizzo, Jr., AKA James Pizzo, Senior, guilty of conspiring to violate the RICO Act is:
1. Two or more persons, in some way or manner, came to a mutual understanding to try to accomplish a common and unlawful plan, namely to engage in a "pattern of racketeering activity" as charged in the Amended Information; and

*834 2. James Frank Pizzo, AKA James Pizzo, Jr. and/or Rozlyn Pizzo and/or James Pizzo, Jr., AKA James Pizzo, Senior, knowingly and willfully became a member of such conspiracy; and
3. At the time James Frank Pizzo, AKA James Pizzo, Jr. and/or Rozlyn Pizzo and/or James Pizzo, Jr., AKA James Pizzo, Senior, joined such conspiracy, each did so with the specific intent either to personally engage in at least two incidents of racketeering, as alleged in the Amended Information, or they specifically intended to otherwise participate in the affairs of the "enterprise" with the knowledge and intent that other members of the conspiracy would engage in at least two incidents of racketeering, as alleged in the Amended Information, as part of a "pattern of racketeering activity."
(Emphasis added.)
The use of the conjunction and/or allowed for a conviction of Mr. Pizzo based solely on a determination that either his wife, Rozlyn, or his father, James, "knowingly and willfully became a member of such conspiracy" "with the specific intent either to personally engage in at least two incidents of racketeering" or "to otherwise participate in the affairs of the `enterprise' with the knowledge and intent that other members of the conspiracy would engage in at least two incidents of racketeering." The trial court therefore committed fundamental error in instructing the jury on the crime of conspiracy to commit racketeering. Accordingly, we reverse Mr. Pizzo's conviction for conspiracy to commit racketeering and remand for a new trial on the charge.

C. Double Jeopardy

Mr. Pizzo was convicted of grand theft and organized fraud based on contracts homeowners entered into for home improvement with East Coast Exteriors. Convictions for both organized fraud and grand theft that are based on common allegations violate the constitutional prohibition against double jeopardy. Cherry v. State, 592 So.2d 292, 294-95 (Fla. 2d DCA 1991); Donovan v. State, 572 So.2d 522, 525 (Fla. 5th DCA 1990). Although Mr. Pizzo did not preserve this issue for review, a double jeopardy violation is considered fundamental error. See Gisi v. State, 848 So.2d 1278, 1281 (Fla. 2d DCA 2003). Moreover, the State concedes error on this issue.
Ordinarily, we would reverse the lesser of the offenses and affirm the greater. See Cherry, 592 So.2d at 295; Donovan, 572 So.2d at 526. However, in this case there are six counts of grand theft, a third-degree felony, and one count of organized fraud, a first-degree felony. Therefore, we are unable to determine which is actually the "lesser" of the offenses. Accordingly, we reverse Mr. Pizzo's grand theft and organized fraud convictions and remand for the trial court to a grant judgment of acquittal on the lesser of the offenses.

III. Resentencing on Remand

The court sentenced Mr. Pizzo under the pre-October 1998 sentencing guidelines to an upward departure sentence of fifteen years' imprisonment followed by ten years' probation for the conspiracy and racketeering charges. For the remaining charges, the court sentenced Mr. Pizzo to five years' concurrent imprisonment. Some time after Mr. Pizzo filed his notice of appeal, the court entered a judgment for restitution in the amount of $58,040.58 and judgments for costs of investigation in the amount of $79,957.63 and costs of prosecution in the amount of $6861.90. The judgments made Mr. Pizzo; his wife, Rozlyn; and his father, James, *835 jointly and severally liable for the restitution and costs.
Our disposition of this case will require resentencing on remand. In order to assist the court in this effort, we note two sentencing errors that occurred below. First, the trial court erred in imposing an upward departure sentence based upon facts that were neither admitted nor submitted to the jury. See Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). The bases for the upward departure were sections 921.0016(3)(f) and 921.0016(3)(n)(1, 2), Florida Statutes (1997). Section 921.0016(3)(f) provides for an upward departure if "[t]he defendant occupied a leadership role in a criminal organization." An upward departure is permissible under section 921.0016(3)(n)(1, 2) if "[t]he offense resulted in substantial economic hardship to a victim and consisted of an illegal act or acts committed by means of concealment, guile, or fraud to obtain money," and (1) there were either multiple victims or multiple acts per victim and (2) there was either a "high degree of sophistication or planning" or the offense "occurred over a lengthy period of time." The jury did not make the findings necessary to support an upward departure sentence under sections 921.0016(3)(f) and 921.0016(3)(n)(1, 2).
Second, the trial court erred in imposing restitution, costs of prosecution, and costs of investigation after Mr. Pizzo filed a timely notice of appeal. See K.D. v. State, 779 So.2d 468, 468 (Fla. 2d DCA 2000); Skaggs v. State, 620 So.2d 1304, 1305 (Fla. 2d DCA 1993).

IV. Conclusion

We affirm Mr. Pizzo's conviction for racketeering and reverse Mr. Pizzo's convictions for mortgage fraud, conspiracy to commit racketeering, grand theft, and organized fraud. We remand for further proceedings consistent with this opinion. On remand, the trial court must grant a judgment of acquittal on the lesser of the grand theft or organized fraud charges.
Affirmed in part; reversed in part; and remanded.
SALCINES and KELLY, JJ., Concur.
NOTES
[1] Rozlyn was convicted of organized fraud, conspiracy to commit racketeering, and five counts of mortgage fraud. She has appealed those convictions in Pizzo v. State, 910 So.2d 287 (Fla. 2d DCA 2005). James, Mr. Pizzo's father, was convicted of organized fraud and conspiracy to commit racketeering. He has appealed those convictions in Pizzo v. State, 910 So.2d 286 (Fla. 2d DCA 2005). Edwina was found guilty of organized fraud, but her conviction was set aside by the trial court.
[2] In fact, Mr. Pizzo quoted several of the named victims interest rates between 6% and 7% but the victims were usually financed with interest rates between 16% and 18%.