910 So.2d 287 (2005)
Rozlyn PIZZO, Appellant,
v.
STATE of Florida, Appellee.
No. 2D03-4914.
District Court of Appeal of Florida, Second District.
July 22, 2005.
Rehearing Denied September 20, 2005.
*288 Bruce S. Rogow and Beverly A. Pohl of Bruce S. Rogow, P.A., Fort Lauderdale, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Anne Sheer Weiner, Assistant Attorney General, Tampa, for Appellee.
*289 ALTENBERND, Judge.
Rozlyn Pizzo seeks review of her judgment and sentence for organized fraud, conspiracy to commit racketeering, racketeering, and five counts of mortgage fraud, which arose out of her employment with East Coast Exteriors, Inc., a family-owned home improvement business operated by her husband, James Frank "Jimmy" Pizzo. We affirm Mrs. Pizzo's conviction for organized fraud. Due to the fact that the jury instructions were fundamentally erroneous, we reverse the conviction for conspiracy to commit racketeering and remand for a new trial. We also reverse Mrs. Pizzo's convictions for mortgage fraud and racketeering based on our determination that the evidence was insufficient to support those convictions.

I. Factual Background

The facts of this case are set forth fully in Jimmy Pizzo's appeal, Pizzo v. State, No. 2D03-4913, ___ So.2d ___, 2005 WL 1704833 (Fla. 2d DCA July 22, 2005) ("Pizzo I"). Mrs. Pizzo was tried for organized fraud, conspiracy to commit racketeering, racketeering, and mortgage fraud with her husband, Jimmy; her father-in-law, James; and her mother-in-law, Edwina. The charges arose from their association with East Coast Exteriors, which sold windows, soffits, fascia, and siding through telemarketing followed by direct sales to homeowners. The fraud charges were based on misrepresentations that the windows being sold were "Reynolds" windows when they were actually Caradon Better Bilt windows distributed by Reynolds Building Products; misrepresentations regarding East Coast Exteriors' history and capacity to do the work; and misrepresentations and omissions regarding a packet of forms presented to customers. Mrs. Pizzo's involvement was limited to her role as office manager of East Coast Exteriors.
As office manager, Mrs. Pizzo prepared the packet of forms that East Coast Exteriors' sales representatives presented to its customers. Those forms included a contract for the sale of the item, a financing contract, a certificate of completion, and an acknowledgment of a UCC-1 form. If a customer signed a financing contract, the lender acquired the right to record the UCC-1, which imposed a lien against the property to which the fixture attached until the loan was satisfied. East Coast Exteriors offered in-house financing, and Mrs. Pizzo utilized UCC-1s to file liens on the customers' property in the name of East Coast Exteriors.
East Coast Exteriors also offered retail mortgages through American General Finance and consolidation loans through a mortgage broker. Mrs. Pizzo was East Coast Exteriors' designated agent for American General, and she submitted the packet of forms to American General for financing. As is more fully explained in Pizzo I, the fraud charges were based in part on misrepresentations and omissions made by East Coast Exteriors' sales representatives in the course of procuring the customers' signatures on the forms, which resulted in liens and mortgages being recorded against their property without their knowledge. Mrs. Pizzo routinely signed these forms as a witness after the sales representatives returned the forms to her at East Coast Exteriors' office.[1] Mrs. Pizzo also admitted to an employee that she was aware that work was started on customers' homes before financing was approved and before the right of rescission *290 expired. Furthermore, Mrs. Pizzo responded to at least one customer complaint that a mortgage had been filed without that customer's knowledge.

II. Issues on Appeal

Mrs. Pizzo raises ten issues on appeal, several of which are identical to those raised by Jimmy in Pizzo I. As we did in Pizzo I, we affirm without comment the issues regarding (1) the admission of bad acts evidence, (2) the admission of certain testimony of Special Agent Charles Leonard, (3) the denial of Mrs. Pizzo's request for a special jury instruction on mortgage fraud, and (4) the oral delivery of the jury instructions on organized fraud.
We also affirm the additional issues Mrs. Pizzo raises regarding (1) the denial of Mrs. Pizzo's motion for judgment of acquittal on organized fraud and (2) the denial of Mrs. Pizzo's motion for judgment of acquittal on conspiracy to commit racketeering. We reverse as to the issues regarding (1) the denial of Mrs. Pizzo's motion for judgment of acquittal on mortgage fraud, (2) the denial of Mrs. Pizzo's motion for judgment of acquittal on racketeering, and (3) the instruction of the jury on conspiracy to commit racketeering. Our reversal renders Mrs. Pizzo's remaining issue regarding her sentence moot. However, as we did in Pizzo I, we address this issue in order to assist the court on remand.

A. Judgment of Acquittal-Organized Fraud

This court conducts a de novo review of the denial of a motion for judgment of acquittal. Pagan v. State, 830 So.2d 792, 803 (Fla.2002). A trial court should not grant a judgment of acquittal unless the evidence, when viewed in the light most favorable to the State, does not present a prima facie case of guilt. Lester v. State, 891 So.2d 1219, 1220 (Fla. 2d DCA 2005).
In this case, the State charged Mrs. Pizzo with organized fraud in violation of section 817.034(4)(a), Florida Statutes (1997), which provides that "[a]ny person who engages in a scheme to defraud and obtains property thereby is guilty of organized fraud." "Scheme to defraud" is defined as "a systematic, ongoing course of conduct with intent to defraud one or more persons, or with intent to obtain property from one or more persons by false or fraudulent pretenses, representations, or promises or willful misrepresentations of a future act." § 817.034(3)(d).
The elements of organized fraud are (1) engaging in or furthering a systematic, ongoing course of conduct, (2) with intent to defraud or with intent to obtain property by false or fraudulent pretenses, representations, or promises or willful misrepresentations of a future act, (3) which results in temporarily or permanently depriving a person of the right to or benefit from property, or appropriating the property to one's own use or to the use of another person not entitled to the property. Louberti v. State, 895 So.2d 479, 480-81 (Fla. 4th DCA 2005).
Contrary to Mrs. Pizzo's argument, there is no requirement that the defendant actually communicate as part of the scheme to defraud under section 817.034(4)(a). See State v. Summerlot, 711 So.2d 589, 592 (Fla. 3d DCA 1998); see also Kipping v. State, 702 So.2d 578 (Fla. 2d DCA 1997) (affirming organized fraud conviction of defendant who did not actually communicate as part of the scheme). The Summerlot holding is supported by the fact that the elements of theft, which do not require a communication, are also elements of organized fraud. See Sewall v. State, 783 So.2d 1171, 1177 (Fla. 5th *291 DCA 2001). Organized fraud requires only one additional element-furthering "a systematic, ongoing course of conduct," id., and this element does not require a communication.
This case is analogous to Kipping, 702 So.2d 578. In Kipping, the defendants were charged with organized fraud based on the sale of dance lessons at their dance studios. Id. at 579. The State presented evidence that elderly students were charged "outrageous" fees for the lessons and pressured to purchase additional lessons and other peripheral items. Id. at 579-80. The students were told they would become expert ballroom dancers but most were not capable of doing so. Id. at 580.
The three defendants had different levels of involvement with the scheme. Defendant Robert Kipping, the primary owner of both dance studios, was "the person in charge of both operations, or `the boss.'" Id. at 579. Defendant James Kipping was a co-owner of one of the dance studios who had worked for a period of time as a dance instructor at the other studio. He did not have the ability to override Robert's decisions. Defendant David Andrews was the sales manager for both studios who handled the day-to-day management.
This court affirmed the denial of a motion for judgment of acquittal on the organized fraud charges as to Defendant James Kipping, the co-owner of one of the studios. Id. at 581. Although there was no direct evidence of James Kipping's involvement in the high-pressure sales tactics, the court found that "his involvement was sufficient that he must have had knowledge of the tactics employed at the dance studios" and that he assisted in the crime. Id.
In this case, the jury found that Mrs. Pizzo's husband, Jimmy, engaged in a systematic, ongoing course of conduct with intent to defraud which resulted in permanently depriving East Coast Exteriors' customers of their money. Jimmy overcharged for windows that were not the brand he advertised and trained his salespeople to misrepresent the company's status to make the sales. He also trained his sales representatives to procure premature signatures on mortgage documents and certificates of completion without informing the customers of the nature of the documents and without obtaining the proper witness and notary signatures. He quoted interest rates for refinancing that were significantly lower than those actually attained. He also arranged for the work to start before the financing was approved, the customers became aware of the true interest rate, and the right of rescission expired. Even though some of the customers were satisfied with the product and price, the State does not have to show loss or other detriment to the victim. See Batten v. State, 591 So.2d 960, 963 (Fla. 2d DCA 1991).
As for Mrs. Pizzo, the evidence did not show that she had any knowledge of the sales tactics used by the salespeople. However, there was evidence that she knew mortgage documents and certificates of completion were signed prematurely and without the proper witness and notary signatures. Mrs. Pizzo's title was office manager and she was the agent for American General Financing, so she would have seen the financing documents and the disparate interest rates. There was also evidence that she was aware that the work was started before the financing was approved and before the right of rescission expired. Thus, Mrs. Pizzo may not have organized the scheme to defraud, but like the defendant in Kipping, she had knowledge of the scheme and assisted in it. Accordingly, the trial court did not err in *292 denying Mrs. Pizzo's motion for judgment of acquittal on this charge.

B. Judgment of Acquittal-Conspiracy to Commit Racketeering

The State charged Mrs. Pizzo with conspiracy to commit racketeering in violation of section 895.03, Florida Statutes (1997), which provides, in pertinent part:
(3) It is unlawful for any person employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity or the collection of an unlawful debt.
(4) It is unlawful for any person to conspire or endeavor to violate any of the provisions of . . . subsection (3).
A corporation is an "enterprise." § 895.02(3). "Racketeering activity" is defined as committing, attempting to commit, conspiring to commit, or soliciting, coercing, or intimidating another person to commit any predicate crime listed in section 895.02(1)(a), which in this case is mortgage fraud, see § 895.02(1)(a)(25).
Mrs. Pizzo raises two arguments in support of her motion for judgment of acquittal. First, Mrs. Pizzo argues that the record does not contain evidence of an agreement by her to commit mortgage fraud, which is the enumerated offense listed in the information. The jury was instructed on the following elements of a conspiracy to commit racketeering: (1) "a mutual understanding to try to accomplish a common and unlawful plan, namely to engage in a `pattern of racketeering activity' as charged in the Amended Information"; (2) the defendant "knowingly and willfully became a member of such conspiracy"; and (3) the defendant joined the conspiracy "with the specific intent either to personally engage in at least two incidents of racketeering, as alleged in the Amended Information, or they specifically intended to otherwise participate in the affairs of the `enterprise' with the knowledge and intent that other members of the conspiracy would engage in at least two incidents of racketeering." (Emphasis added.) Thus, it was not necessary for the State to prove that Mrs. Pizzo entered into an agreement to commit mortgage fraud; the State only needed to prove that Mrs. Pizzo entered into an agreement to engage in a pattern of criminal activity. See Jennifer Daley, Tightening the Net of Florida's RICO Act, 21 Fla. St. U.L.Rev. 381, 409-10 (Fall 1993).
The State proved that Mrs. Pizzo knew mortgage documents and certificates of completion were signed prematurely and without the proper witness and notary signatures. Mrs. Pizzo also knew about the disparate interest rates and the fact that the work was started before the financing was approved and before the right of rescission expired. The fact that Mrs. Pizzo submitted the financing documents to American General and filed the mortgages establishes that she agreed to engage in a pattern of criminal activity involving obtaining signatures on mortgage documents by false pretenses.
Mrs. Pizzo's second argument is that there is no evidence that she committed the predicate acts for conspiracy. Because the State has established that Mrs. Pizzo agreed to the overall objective of the conspiracy, Mrs. Pizzo's argument that the State did not prove that she committed two predicate acts is rendered moot.

C. Judgment of Acquittal-Mortgage Fraud

The State charged Mrs. Pizzo with six counts of mortgage fraud in violation of section 817.54, Florida Statutes (1997), which provides:

*293 Any person who, with intent to defraud, obtains any mortgage, mortgage note, promissory note or other instrument evidencing a debt from any person or obtains the signature of any person to any mortgage, mortgage note, promissory note or other instrument evidencing a debt by color or aid of fraudulent or false representation or pretenses, or obtains the signature of any person to a mortgage, mortgage note, promissory note, or other instrument evidencing a debt, the false making whereof would be punishable as forgery, shall be guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
The elements of the crime as charged are (1) obtaining a mortgage, mortgage note, promissory note, or other instrument evidencing a debt or obtaining the signature of a person to a mortgage, mortgage note, promissory note, or other instrument evidencing a debt, (2) by color or aid of fraudulent or false representation or pretenses, (3) with intent to defraud. The victim's reliance on the fraudulent or false representation is also an essential element of the crime of mortgage fraud. Adams v. State, 650 So.2d 1039, 1041 (Fla. 3d DCA 1995).
Mrs. Pizzo argues that the State has not presented a prima facie case of guilt because there is no evidence that she made any fraudulent or false representations to any of the named victims. In fact, there is no evidence of any contact between Mrs. Pizzo and any of the customers prior to their signing the mortgage forms. While Mrs. Pizzo did prepare the packet of forms that East Coast Exteriors' sales representatives presented to the customers, she sent the packet to East Coast Exteriors' sales representatives who obtained the customers' signatures on the forms. There was no evidence that the customers relied on any false or fraudulent representations made by anyone but the sales representatives and Jimmy himself. Accordingly, the trial court erred in denying Mrs. Pizzo's motion for judgment of acquittal on mortgage fraud.

D. Judgment of Acquittal-Racketeering

The State charged Mrs. Pizzo with racketeering in violation of section 895.03(3), which provides, "It is unlawful for any person employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity." A corporation is an "enterprise." § 895.02(3).
"Racketeering activity" is defined as committing, attempting to commit, conspiring to commit, or soliciting, coercing, or intimidating another person to commit any predicate crime listed in section 895.02(1)(a). The information in this case charged that Mrs. Pizzo committed the predicate crime of mortgage fraud.[2]See § 895.02(1)(a)(25). Because the State did not prove the predicate crime of mortgage fraud, it has not established that Mrs. Pizzo engaged in a pattern of racketeering activity. Accordingly, the trial court erred in denying Mrs. Pizzo's motion for judgment of acquittal on racketeering.

E. Jury Instructions-Conspiracy

As we did in Pizzo I, we reverse Mrs. Pizzo's conviction for conspiracy to commit racketeering based on our determination that the trial court committed fundamental error in instructing the jury on the crime of conspiracy to commit racketeering. *294 See Cabrera v. State, 890 So.2d 506, 507 (Fla. 2d DCA 2005); see also Rios v. State, 905 So.2d 931, 932 (Fla. 2d DCA 2005).

III. Resentencing on Remand

Our disposition of this case will require resentencing on remand. In order to assist the court in this effort, as we did in Pizzo I, we note that the court erred in imposing restitution, costs of prosecution, and costs of investigation after Mrs. Pizzo filed a timely notice of appeal. See K.D. v. State, 779 So.2d 468, 468 (Fla. 2d DCA 2000); Skaggs v. State, 620 So.2d 1304, 1305 (Fla. 2d DCA 1993).

IV. Conclusion

We affirm Mrs. Pizzo's conviction for organized fraud and reverse Mrs. Pizzo's convictions for mortgage fraud, racketeering, and conspiracy to commit racketeering. We remand for further proceedings consistent with this opinion.
Affirmed in part; reversed in part; and remanded.
SALCINES and KELLY, JJ., Concur.
NOTES
[1] The State never made any criminal allegations regarding Mrs. Pizzo's practice of improperly witnessing the financing documents.
[2] We note that the State did not charge conspiracy to commit mortgage fraud as a predicate crime. If it had, our analysis today would be different on this issue.